**Peter PROBST, Plaintiff–Appellant,**

v.

**John ASHCROFT, Attorney General, and Donnie R. Marshall, Administrator, Drug Enforcement Administration, Defendants–Appellees.**

No. 00–4316.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 22, 2001.

Decided Dec. 28, 2001.

**470**

Before FLAUM, Chief Judge, RIPPLE, WILLIAMS, Circuit Judges.

## ORDER

Peter Probst filed a race-based discrimination and retaliation lawsuit against the defendants and prevailed. However, Probst believed that he was subject to further retaliatory harassment during and after his lawsuit. So he filed another. This time he was not so fortunate. The district court granted summary judgment to the defendants. We believe that the decision of the district court was correct and therefore affirm.

The facts of this case are lengthy and very detailed; most are unnecessary to repeat for our disposition of this case. For a thorough recitation of the facts, see *Probst v. Reno*, No. 99 C 3897, 2000 WL 1372872 (N.D.Ill. Sept. 22 2000). We provide an abbreviated summary for context.

Probst is a Special Agent of the Drug Enforcement Administration ("DEA"). In

1994, he sued then-Attorney General Janet Reno and then-DEA Administrator Thomas Constantine, alleging racial discrimination and retaliation. Part of the case was resolved by an agreement between the parties, and the remainder was left to the district court to decide. The defendants conceded virtually all the issues of liability, and the district court was left to resolve only damages. After a brief trial, the district court issued a judgment in favor of Probst. *Probst v. Reno*, 917 F.Supp. 554 (N.D.Ill.1995).

During and after the racial discrimination and retaliation lawsuit, the DEA and Department of Justice ("DOJ") engaged in a number of activities that Probst believed were also retaliatory. So Probst filed this retaliation lawsuit.[1] The defendants moved for summary judgment, which the district court granted on several grounds. Probst now appeals.

A series of procedural doctrines exclude a substantial part of Probst's factual allegations from consideration by this court. But we only address the primary one, the litigation privilege, because the allegations excludable under the other procedural doctrines, res judicata and procedural default, substantially overlap with that doctrine or are unnecessary to resolve in light of our conclusion on the merits. We review the judgment of the district court de novo, viewing the facts in the light most favorable to Probst (the nonmoving party) and drawing all reasonable, justifiable inferences in his favor. *See, e.g., Lalvani v. Cook County, Illinois*, 269 F.3d 785, 789 (7th Cir.2001).

 During the course of Probst's first racial discrimination and retaliation lawsuit, the defendants filed motions to seal the trial transcript and to alter or amend

---

**1.** Pursuant to Fed. R.App. P. 43(c)(2), Attorney General John Ashcroft and DEA Administrator Donnie Marshall were substituted for their predecessors Janet Reno and Thomas Constantine.

the judgment. The DOJ filed a consolidated opposition in response to motions for new trials in the Claiborne case (an unrelated, but relevant criminal case). The DEA objected to expunging Probst's Red Jacket File (and submitted an affidavit with that objection) and delayed expunging DEA/OPR files. Finally, the DEA delayed producing five boxes of relevant documents and asserted privilege to parts of the documents, and the defendants delayed and disputed in part the amount they were required to pay in damages, attorney's fees and back pay, and required to restore for leave time. None of these actions can support a finding of liability in this retaliation lawsuit, because they are all excluded from consideration by the litigation privilege—a doctrine that simply precludes actions taken in the adversarial setting of litigation and otherwise redressable through court process from supporting further litigation. *See Steffes v. Stepan Co.*, 144 F.3d 1070, 1075–77 (7th Cir.1998); *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 486 (7th Cir.1996); *Auriemma v. Montgomery*, 860 F.2d 273, 278 (7th Cir. 1988).

As for Probst's claims of retaliation, the prima facie case of retaliation requires that he show that (1) he engaged in protected activity, (2) he subsequently suffered an adverse employment action, and (3) a causal nexus exists between the adverse action and the protected activity. *See, e.g., Stutler v. Illinois Dep't of Corrections*, 263 F.3d 698, 702 (7th Cir.2001). Probst has failed to show any adverse employment action.

Probst has not shown that the DEA or DOJ materially changed the terms and conditions of his employment. He remains in his current position as Marijuana Eradication Coordinator, which he has held since 1991. And he has suffered no traditional adverse employment action, as his pay and responsibilities have not changed. In his current position, he alleges that he does not work on cases or investigations, because he was ordered by his superiors not to work on cases or investigations and that order has not been rescinded. But Probst cannot challenge that order, because it occurred several years before his first lawsuit in 1994, and any challenge to the order would be barred by his release agreement in the first lawsuit or by res judicata. For the moment, we put that problem to the side.

To demonstrate adverse employment action, Probst asserts that the DEA created and collected documents in an investigation accusing him of lying under oath and misrepresenting facts, all which would likely qualify as impeachment evidence under *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). This impeachment evidence, he argues, diminishes his ability to testify, and as a result, work on cases or investigations, both which are part of his job responsibilities and are necessary for advancement. Next, he asserts that the DEA promoted the individuals who initially retaliated against him, one of whom is now in control of his future promotion. He reasons that by this action the DEA signaled to him that he could no longer advance, and that it in fact prevented him from advancing.[2]

■ But these arguments are speculative—*e.g., if* Probst worked on a case or

---

2. He also alleges that his reputation and credibility were injured by then-DEA Administrator Constantine's letters to the St. Louis Post Dispatch and to several United States Senators addressing the first lawsuit, and by the DEA's short-lived order to him not to speak to the press. We do not believe that these alle-

gations amount to adverse employment action, *see Smart v. Ball State University*, 89 F.3d 437, 441–42 (7th Cir.1996), but to the extent they effect his ability to testify, we consider them along with his first allegation in the text.

investigation, and *if* it went to trial, and *if* he was called to testify, and *if* the DEA's investigation of him was relevant and admissible in the case, and *if* defense counsel decided to impeach him with it, he *may* lose credibility and therefore *may* not be able to testify or work on cases or investigations. Hypothetical possibilities are not materially adverse employment actions. *See Sweeney v. West,* 149 F.3d 550, 556 (7th Cir.1998) (stating that adverse actions are not material if they lack any "tangible job consequence"); *see also Aquilino v. University of Kansas,* 268 F.3d 930, 936 (10th Cir.2001) ("Speculative harm does not constitute adverse employment action."); *Davis v. Town of Lake Park, Florida,* 245 F.3d 1232, 1239–40 (11th Cir.2001) ("[T]he asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment."). Therefore, Probst has not shown an adverse employment action, and summary judgment was appropriate.

AFFIRMED