Darin D. JOHNSON, Plaintiff,

v.

HONDA OF AMERICA MANUFACTURING, INC., Defendant.

No. 01–CV–516.

United States District Court, S.D. Ohio, Eastern Division.

Sept. 30, 2002.

Darin D. Johnson, Hilliard, OH, for Plaintiff.

Mary Ellen Fairfield, Vorys, Sater, Seymour & Pease, Columbus, OH, for Defendant.

## OPINION AND ORDER

MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before the Court on the Defendant's Motion to Dismiss Plaintiff's Ohio Public Policy Claim, filed with the Court on July 26, 2001. On August 8, 2001, the Plaintiff filed a Motion to Certify to the Ohio Supreme Court the question of whether the Plaintiff's public policy claim should be dismissed. On March 4, 2002, this Court denied the Plaintiff's Motion to Certify, and ordered that the Plaintiff respond to the Defendant's Motion to Dismiss. The Plaintiff filed a Memorandum Contra Defendant's Motion to Dismiss on March 25, 2002.

For the reasons set forth below, the Defendant's Motion to Dismiss Plaintiff's Ohio Public Policy Claim is **GRANTED.**

### II. FACTS

The following facts were set forth in this Court's March 4, 2002 Opinion and Order.[1]

The Plaintiff, Darin D. Johnson ("Johnson") was employed by the Defendant, Honda of America Manufacturing, Inc. ("HAM") from February 22, 1988 until he was terminated on February 27, 2001. Johnson claims that, on April 11, 1999, he had an episode of gastroesophageal reflux disease, and that, on April 20, 1999, he had a colonoscopy. On April 27, 1999, HAM approved Johnson's intermittent leave of absence from April 12, 1999 to May 2, 1999 as qualifying under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA").

Johnson requested a leave of absence for the period between May 9, 1999 and May 13, 1999 because he had colitis and gastroenteritis.[2] On both May 9, 1999, and May 11, 1999, Johnson contacted HAM and reported that he would be unable to work due to his illness. On May 13, 1999, Johnson's health care provider released him to return to work. On June 1, 1999, HAM disallowed Johnson's leave

---

**1.** The Defendant asserts that it disputes some of the facts as set forth by the Plaintiff, but does not elaborate on the source of that dispute because the Motion to Dismiss is premised on an issue of law, separate and apart from the facts.

**2.** It is unclear from the pleadings when Johnson made this request for leave.

of absence from May 9, 1999 to May 13, 1999 based on HAM's assertion that Johnson had requested FMLA leave for a non-qualifying event.

Johnson claims that he requested FMLA leave for five days beginning on January 16, 2001 because he had severe gastroenteritis and flu with complications. On January 23, 2001, Johnson received a request from HAM to have his physician certify that the leave of absence was for a serious medical condition. Johnson contends that, due to circumstances beyond his control, the medical certification was not returned to HAM by its due date of February 6, 2001, but arrived to HAM three days later, on February 9, 2001.[3] Subsequently, HAM disallowed Johnson's January 16, 2001 to January 21, 2001 leave of absence. On February 27, 2001, HAM terminated Johnson's employment, claiming that the termination was based on Johnson's violations of its leave policies in May 1999 and January 2001.

Based on the foregoing series of events, Johnson filed a Complaint with this Court on May 30, 2001, in which he alleged the following claims: (1) violation of the FMLA based on his termination; (2) violations of the FMLA based on the denials of his leaves of absence in May 1999 and January 2001; and (3) violation of Ohio public policy based on his termination. This matter is now before the Court on Ham's Motion to Dismiss Johnson's Ohio public policy claim.

### III. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, this Court is limited to evaluating whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983). A complaint should not be dis-missed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir.1996). This Court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Lillard*, 76 F.3d at 724 (quoting *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.1994)). While the complaint need not specify every detail of a plaintiff's claim, it must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gazette*, 41 F.3d at 1064. Though liberal, this standard of review does require more than the bare assertion of legal conclusions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993) (citation omitted). A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir.1988).

### IV. ANALYSIS

The Plaintiff alleges that the Defendant is liable for the tort of wrongful discharge in violation of Ohio public policy based on its alleged violation of the FMLA and the public policy expressed therein. To establish a cause of action for the tort of wrongful discharge in violation of public policy under Ohio law, the plaintiff must prove:

    (1) That a clear public policy existed and was manifested in a state or federal constitution, statute, or administrative regulation, or in the common law ("the clarity element").

---

**3.** Subsequently, Johnson's physician sent a letter to HAM, stating that he, not Johnson, was responsible for the late documentation of Johnson's illness.

(2) That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy ("the jeopardy element").

(3) The plaintiff's dismissal was motivated by conduct related to the public policy ("the causation element").

(4) The employer lacked an overriding legitimate business justification for the dismissal ("the overriding justification element").

*Collins v. Rizkana*, 73 Ohio St.3d 65, 652 N.E.2d 653, 657–58 (1995). The first two elements of the claim are questions of law to be decided by the court, while the latter two elements are questions of fact to be decided by a jury. *Id.* at 658.

The parties do not dispute that the FMLA manifests a sufficiently clear public policy to satisfy the first element of the wrongful discharge claim. *See* 29 U.S.C. § 2601(b) (expressing an intent "to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity" and "to entitle employees to take reasonable leave for medical reasons ... and for the care of a child, spouse, or parent who has a serious health condition"). The Court, therefore, turns to the question of whether the Plaintiff has satisfied the jeopardy element. In other words, the Court must now "assess whether the absence of a cognizable [public policy] claim based solely on a violation of the FMLA would seriously compromise the Act's statutory objectives by deterring eligible employees from exercising their substantive leave rights." *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 773 N.E.2d 526, 531 (2002) (plurality opinion) (citing *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 677 N.E.2d 308 (1997)).

■ Recently, in a case where the plaintiff attempted to assert a wrongful discharge claim based on the defendant's alleged violation of the FMLA, the Supreme Court of Ohio explained the import of the jeopardy element and described the analysis in which a court must engage when determining whether the Plaintiff has satisfied that element of the public policy claim:

An analysis of the jeopardy element necessarily involves inquiring into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful discharge claim. [2 Perritt, Employee Dismissal Law and Practice (4th Ed.1998)] at 44, Section 7.17. Where, as here, the sole source of the public policy opposing the discharge is a statute that provides the substantive right and remedies for its breach, "the issue of adequacy of remedies" becomes a particularly important component of the jeopardy analysis. *See Collins*, 652 N.E.2d at 660. "If the statute that establishes the public policy contains its own remedies, it is less likely that tort liability is necessary to prevent dismissals from interfering with realizing the statutory policy." 2 Perritt at 71, Section 7.26. Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests.... In that situation, the public policy expressed in the statute would not be jeopardized by the absence of a common-law wrongful-discharge action in tort because an aggrieved employee has an alternate means of vindicating his or her statutory rights and thereby discouraging an employer from engaging in the unlawful conduct.

*Wiles*, 773 N.E.2d at 531. Accordingly, if, upon examination, this Court determines that the remedies provided by Congress in the FMLA adequately protect the public policy set forth therein, then the Plaintiff

cannot recover additional damages by asserting a wrongful discharge public policy claim.

In presenting their respective arguments regarding the viability of the Plaintiff's public policy claim, both the Plaintiff and the Defendant rely on *Kulch v. Structural Fibers*, 78 Ohio St.3d 134, 677 N.E.2d 308 (1997). Indeed, this Court's March 4, 2002 Opinion and Order recognized that *Kulch* dictated the analysis for determining whether a wrongful discharge claim may be asserted based on the defendant's violation of the FMLA. In particular, the Court found that, under *Kulch*, "courts must determine whether the statutory remedies provided by the legislature are intended to be exclusive before they can allow a plaintiff to recover additional damages on a public policy-based wrongful discharge claim." *See Kulch*, 677 N.E.2d at 324–25 (allowing a public policy wrongful discharge claim to be asserted based on a violation of Ohio's whistle blower statute after a determination that the remedies provided therein were not intended to be exclusive); *see also Cavin v. Honda of America Mfg., Inc.*, 138 F.Supp.2d 987, 997 (S.D.Ohio 2001) (stating that "*Kulch* stands for the proposition that a plaintiff may assert a wrongful discharge tort claim based upon the policy of a statute where the remedies provided by that statute will not afford the plaintiff complete relief, *and*

the remedies are not intended to be the exclusive remedies for violations of the statute's policy") (emphasis in original).

In *Wiles*, however, a plurality of the Supreme Court of Ohio stated that "*Kulch* is not controlling authority on the question of whether the remedies provided in a statute are sufficiently comprehensive to render unnecessary the recognition of a separate common-law [wrongful discharge] claim based solely on the same statute...." *Wiles*, 773 N.E.2d at 534. The *Wiles* court rejected the plaintiff's argument that *Kulch* stood for the proposition that statutory remedies are inadequate, thereby warranting a public policy claim, when the remedies set forth in a statute provide less than the full panoply of relief that would be available in a tort cause of action for wrongful discharge. *Id.* Indeed, *Wiles* changed the landscape for courts analyzing whether a plaintiff may assert a public policy wrongful discharge claim based on the defendant's alleged violation of the FMLA. After *Wiles*, the Court need no longer determine whether the FMLA provides the exclusive source of remedies for violation of the statute's policy before allowing the plaintiff to assert a public policy claim.[4] Rather, as stated above, *Wiles* dictates that the Court need only determine whether the remedies set forth in the FMLA *adequately* protect the public interest.[5]

---

**4.** In *Wiles*, the Supreme Court of Ohio noted that, even if *Kulch* were controlling, the plaintiff might not prevail because the remedies provided by the FMLA may be exclusive. *Wiles*, 773 N.E.2d at 535 n. 4. The court noted that the "federal courts are currently split on the question of whether the FMLA remedies are exclusive and therefore preclude other causes of action predicated upon a violation of [the FMLA]." *Id.* (citations omitted).

**5.** In addition to *Kulch*, the parties rely on a number of federal cases that conflict on the issue of whether a wrongful discharge claim may be asserted based on a violation of the

FMLA. *Compare Arthur v. Armco, Inc.*, 122 F.Supp.2d 876 (S.D.Ohio 2000) and *Maxwell v. GTE Wireless Serv. Corp.*, 121 F.Supp.2d 649 (N.D.Ohio 2000) (allowing wrongful discharge claim) *with Cavin v. Honda of Am. Mfg., Inc.*, 138 F.Supp.2d 987, 998 (S.D.Ohio 2001) (prohibiting wrongful discharge claim). These cases, however, were decided under *Kulch*, and turned on the courts' determinations of whether Congress intended for the remedies provided by the FMLA to be exclusive. Because *Wiles* requires only that the Court determine whether the remedies provided by the FMLA are adequate, this Court need not resolve the question of whether the

■ The FMLA provides that an employer who violates the statute may be liable to the affected employee for compensatory damages, interest, liquidated damages, attorney's fees and costs, as well as equitable relief. *See* 29 U.S.C. § 2617. First, the aggrieved employee may recover "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation." 29 U.S.C. § 2617(a)(1)(A)(i)(I). In the alternative, if the employee has not lost any wages, salary, or employment benefits, the employee may recover any other monetary losses actually sustained as the result of the employer's violation. 29 U.S.C. § 2617(a)(1)(A)(i)(II). Second, the employee is entitled to recover the interest on any compensatory damages that he is awarded. 29 U.S.C. § 2617(a)(1)(A)(ii).

Third, the employee may recover liquidated damages equal to the amount of compensatory damages for which the employer is liable. 29 U.S.C. § 2617(a)(1)(A)(iii). Fourth, the court must award reasonable attorney's fees, reasonable expert witness fees, and other costs, in addition to any judgment awarded to an aggrieved employee. 29 U.S.C. § 2617(a)(3). Finally, the statute provides that the court may award an aggrieved employee appropriate equitable relief, including employment, reinstatement, and promotion. 29 U.S.C. § 2617(a)(1)(B).

The Court finds that the remedial scheme set forth in the FMLA adequately protects the public policy expressed in the statute, thereby obviating the need for a common law wrongful discharge claim. *See Cavin v. Honda of Am. Mfg., Inc.*, 138 F.Supp.2d 987, 998 (S.D.Ohio 2001) (holding that a plaintiff may not assert a wrongful discharge claim based solely on a

violation of the FMLA because the statute sets forth specific remedies that Congress intended to compensate individuals for statutory violations); *Gearhart v. Sears, Roebuck & Co., Inc.*, 27 F.Supp.2d 1263, 1278 (D.Kan.1998) (concluding that, because the plaintiff had an adequate federal statutory remedy under the FMLA, she could not maintain a state common law retaliatory discharge claim); *Dorricott v. Fairhill Ctr. for Aging*, 2 F.Supp.2d 982, 993 (N.D.Ohio 1998) (refusing to allow a public policy claim for wrongful discharge because the plaintiff was provided a remedial scheme through the FMLA); *Hamros v. Bethany Homes and Methodist Hosp. of Chicago*, 894 F.Supp. 1176, 1179 (N.D.Ill. 1995) (prohibiting a retaliatory discharge claim under Illinois law because the remedies provided by the FMLA vindicated the statute's public policy).

The Court acknowledges that, under the statutory scheme, the Plaintiff is unable to recover either emotional distress damages or punitive damages. The inability of the Plaintiff to recover these types of damages does not jeopardize the public policy set forth in the statute. Even without emotional distress damages, the FMLA's provision for compensatory damages serves to make the plaintiff whole, and even without punitive damages, the FMLA's provision for liquidated damages operates to punish the defendant. Accordingly, the FMLA's broad remedial scheme preserves the public policy of promoting the stability and economic security of families and allowing employees to take reasonable leave for medical reasons. *See Wiles*, 773 N.E.2d at 532 (finding that the "FMLA's remedial scheme provides an employee with a meaningful opportunity to place himself or herself in the same position the employee would have been absent the employer's violation of the FMLA").[6]

remedies provided by the FMLA are intended to provide the exclusive source of the Plaintiff's relief.

6. The Court recognizes that the question of whether the remedies provided by the FMLA adequately preserve the public policy set forth therein is a question of federal law, as it

The Plaintiff argues that he must be able to assert a wrongful discharge claim along with his FMLA claims because the FMLA expressly states that it does not preempt any state law. In particular, the statute provides:

> Nothing in this Act or any amendment made by this Act shall be construed to supersede any provision of State or local law that provides greater family or medical leave rights than the rights established under this Act or any amendment made by this Act.

29 U.S.C. § 2651. The Plaintiff errs, however, in his contention that the issue of whether a wrongful discharge claim may be brought in conjunction with an FMLA claim is a preemption issue. *See Wiles,* 773 N.E.2d at 535 (stating that the court's holding should not be confused with a finding that the FMLA preempts state law in the area of family and medical leave); *Collins,* 652 N.E.2d at 660 (recognizing that the issue of whether the public policy tort should be rejected where the statute expressing the public policy provides adequate remedies is distinct from the issue of preemption) (citation omitted).

While the FMLA expressly states that it does not preempt any state law that provides greater substantive *rights* than are provided by the federal statute, the issue here is simply whether the *remedies* that compensate an employee for an infringement on those rights are adequate. Clearly, the Plaintiff is not precluded from asserting greater rights than are provided by the FMLA if such rights are protected by Ohio law. The wrongful discharge claim, however, accords the Plaintiff no greater substantive rights, but only more expansive remedies for the violation of his federal rights. The federal statute does not preserve such a cause of action.

The remedies provided by the FMLA adequately preserve the public policy set forth in that statute. Therefore, the Court finds that the Plaintiff is precluded from asserting a wrongful discharge public policy claim based solely on the Defendant's alleged violation of the FMLA.

## V. CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** the Defendant's Motion to Dismiss the Plaintiff's Ohio Public Policy Claim.

**IT IS SO ORDERED.**

---

requires this Court to interpret a federal statute. Nonetheless, the Court finds persuasive the reasoning and conclusion of the Supreme Court of Ohio in *Wiles* that the remedies set forth in the FMLA adequately preserve the statutory public policy, thereby eliminating the need for a public policy claim based on a violation of the federal statute.