Michael ROSANIA, Plaintiff,

v.

**TACO BELL OF AMERICA, INC., Defendant.**

No. 3:03 CV 7525.

United States District Court, N.D. Ohio, Western Division.

Feb. 23, 2004.

John D. Franklin, Tracy Anne Lipinski, Law Office of John D. Franklin, Toledo, OH, for Plaintiff.

James R. Neumeister, Mark S. Floyd, Thompson Hine, Cleveland, OH, for Defendant.

## MEMORANDUM OPINION

KATZ, District Judge.

Pending before the Court is Defendant's partial motion to dismiss Plaintiff's negligence and certain damages claims (Doc. No. 10); and Plaintiff's motion for leave to file amended complaint (Doc. No. 21) as to which Defendant has filed an opposition (Doc. No. 22) and Plaintiff has filed a reply (Doc. No. 23).

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2). For the reasons stated below, Defendant's partial motion to dismiss Plaintiff's negligence and certain damages claims will be granted. Plaintiff's motion for leave to file amended complaint will also be granted.

## BACKGROUND

Plaintiff Michael Rosania ("Rosania") began his employment with Defendant Taco Bell of America ("Taco Bell") in May 1989.[1] In May 2001, Rosania alleges that his mother was diagnosed with terminal colon cancer. Plaintiff contends that while caring for his mother, he was diagnosed with and treated for depression. Plaintiff's mother was admitted to the hospital on November 29, 2002. Rosania maintains that he informed his supervisor Sueyoung Georgas ("Georgas") and requested leave to care for his mother and to receive treatment for his depression.

Plaintiff was to return to work on December 4, 2002, but alleges that he contacted Georgas indicating that he was not yet ready. Two days later Rosania purportedly contacted Georgas to inform her that his mother had passed away, and remained on leave to attend the viewing and funeral. Rosania contends that on December 14 he received a letter from Georgas regarding potential termination due to "job abandonment." Plaintiff asserts that he contacted Georgas the next day and informed her that he could not return to work on December 16 due to a doctor's appointment to treat his depression, but would return on December 17. Rosania was apparently terminated on December 17.

Plaintiff then filed the instant action alleging Defendant violated the Family Medical Leave Act ("FMLA") by interfering with, restraining or denying Rosania his rights under the FMLA and/or by discharging him for asserting/exercising those rights. Plaintiff also alleged a claim against Taco Bell for negligent supervision and retention. Defendant filed a partial motion to dismiss the negligent supervision and retention claim as well as Rosania's claims for compensatory and consequential, emotional distress and punitive damages.

Taco Bell also filed its Answer, affirmative defenses and asserted two counterclaims alleging conversion and unjust enrichment due to Plaintiff's purportedly having received and retained excess mileage reimbursements to which he was not entitled. The Court dismissed Rosania's claim of negligent supervision and retention under Fed.R.Civ.P. 41(a)(1)(ii) following the parties' joint stipulation of dismissal, rendering that portion of Taco Bell's partial motion to dismiss moot. (Doc. Nos. 17 & 18). Plaintiff then filed a motion for leave to file an amended complaint to add a new count, alleging that Defendant's counterclaims represent unlawful retaliation under the FMLA.

## DISCUSSION

### A. DEFENDANT'S PARTIAL MOTION TO DISMISS

Taco Bell moves the Court to dismiss Rosania's claims to compensatory and consequential, emotional distress and punitive damages. Specifically, Defendant seeks to dismiss paragraphs B and E in Plaintiff's prayer for relief, respectively:

> That this Court award Plaintiff an amount to be determined at trial as compensation for his adverse health effects, for loss of the opportunity to engage in gainful employment, and future earnings for humiliation, embarrassment, loss of reputation and loss of self-esteem.

(Doc. No. 1, p. 6).

> That this Court award Plaintiff punitive damages.[2]

*Id.* at 7.

The enforcement provision of the FMLA, 29 U.S.C. § 2617, provides in relevant part:

---

1. Defendant notes that it should be properly identified as Taco Bell Corp.

2. Paragraphs B and E are the same in Rosania's proposed amended complaint.

(a) Civil action by employees

(1) Liability

An employer who violates section 2615 of this title shall be liable to any eligible employee affected—

(A) for damages equal to—

(i) the amount of—

(I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or

(II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to twelve weeks of wages or salary for the employee.

(ii) the interest on the amount described in clause (i) calculated at the prevailing rate; and

(iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii), respectively; and

(B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

■ Defendant contends that the § 2617 sets forth a comprehensive enforcement scheme, and that § 2617(a) provides the exclusive damages that an employee may recover under the FMLA. *See O'Hara v. Mt. Vernon Bd. of Educ.*, 16 F.Supp.2d 868, 894 (S.D.Ohio 1998); *Kilvitis v. County of Luzerne*, 52 F.Supp.2d 403, 418–19 (M.D.Pa.1999); *Desrochers v. Hilton Hotels Corp.*, 28 F.Supp.2d 693, 695 (D.Mass. 1998); *Jolliffe v. Mitchell*, 971 F.Supp. 1039, 1045 (W.D.Va.1997). Other courts have held to the contrary. *See Knussman v. Maryland*, 16 F.Supp.2d 601, 609–10 (D.Md.1998); *Peterson v. Slidell Mem'l. Hosp. & Med. Ctr.*, No. 96–2487, 1996 WL 732840, **2–3, 1996 U.S. Dist. LEXIS 18944, at *7 (E.D.La. Dec. 16, 1996). After a careful review of the aforementioned cases, and the reasoning contained therein, this Court joins those that hold that § 2617 provides the exclusive remedies for an employer's violation of the FMLA.

A number of courts have previously held that a Plaintiff cannot recover damages for emotional distress under the FMLA. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1284 (11th Cir.1999); *Montgomery v. Maryland*, 72 Fed. Appx. 17, 19 (4th Cir.2003); *Johnson v. Honda of Am. Mfg., Inc.*, 221 F.Supp.2d 853, 858 (S.D.Ohio 2002); *Rogers v. AC Humko Corp.*, 56 F.Supp.2d 972, 979 (W.D.Tenn. 1999); *Schmauch v. Honda of Am. Mfg., Inc.*, No. C2–02–751, 2003 U.S. Dist. 24013, at *8 (S.D.Ohio Sept. 16, 2003); *Johnson v. United States Postal Serv.*, No. 1:97–CV–794, 1999 U.S. Dist. LEXIS 7981, at *26 (W.D.Mich. May 26, 1999).

■ The Court recognizes that the Sixth Circuit "has previously turned to the Fair Labor Standards Act (FLSA), which contains similar remedial provisions, for guidance in interpreting the FMLA." *Arban v. West Publ'g Corp.*, 345 F.3d 390, 407 (6th Cir.2003). *See also Chandler v.*

*Specialty Tires of Am.,* 283 F.3d 818, 827 (6th Cir.2002); *Frizzell v. Southwest Motor Freight,* 154 F.3d 641, 644 (6th Cir. 1998). Moreover, in *Moore v. Freeman,* 355 F.3d 558, 561, 2004 FED App. 0014P (6th Cir.), at **8–9 (6th Cir.2004), the Sixth Circuit recently joined other circuits in holding that emotional distress damages may be recovered under the FLSA even though the FLSA's remedial provisions do not explicitly so provide.[3] However, without more definite direction, and due to the lack of express language in the FMLA, the Court will follow existing jurisprudence, and as a result, holds that Rosania is not entitled to recover emotional distress damages. *See Rogers,* 56 F.Supp.2d at 979 (rejecting this same premise due in part to the lack of express language in the FMLA).

Also, Rosania may not recover punitive damages under the FMLA. *See Johnson,* 221 F.Supp.2d at 858; *Schmauch,* No. C2–02–751, 2003 U.S. Dist. 24013, at *8; *Johnson,* No. 1:97–CV–794, 1999 U.S. Dist. LEXIS 7981, at *26. Likewise, Plaintiff is not entitled to recover compensatory and/or consequential damages. *See Walker v. United Parcel Serv.,* 240 F.3d 1268, 1278 (10th Cir.2001); *Montgomery,* 72 Fed.Appx. at 19; *Nero v. Indus. Molding Corp.,* 167 F.3d 921, 930 (5th Cir.1999). Accordingly, Defendant's partial motion addressing Plaintiff's negligence and certain damages claims is granted to the extent it seeks to preclude Rosania's claims for compensatory and consequential damages, emotional distress and punitive damages.

**B. PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Plaintiff moves the Court to allow him to amend his complaint to add a claim for retaliation under the FMLA based on Taco Bell's filing counterclaims for conversion and unjust enrichment. Under Fed.R.Civ.P. 15(a), the trial court is vested with discretion in granting or denying an amendment. *See Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). A trial court may consider a number of factors in making this determination. Those factors may include undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice, futility of the amendment, or the repeated failure to cure deficiencies by amendments previously allowed. *Id.* Additional factors may also include the need for additional discovery, strain on the court's docket, or the lack of prejudice as the issue is already known. *See Budd Co. v. Travelers Indem. Co.,* 820 F.2d 787, 792 (6th Cir.1987). Delay alone is insufficient to deny the proposed amendment. *Robinson v. Michigan Consol. Gas Co. Inc.,* 918 F.2d 579, 581 (6th Cir.1990) (citations omitted). Where a party seeks leave to amend under Rule 15(a), "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake,* 49 F.3d 1197, 1202 (6th Cir.1995) (citing *Troxel Mfg. Co. v. Schwinn Bicycle Co.,* 489 F.2d 968 (6th Cir.1973), *cert. denied,* 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974)).

The FMLA, 29 U.S.C. § 2615, provides in pertinent part:

(a) Interference with rights

---

**3.** The FLSA provides in pertinent part:

Any employer who violates the provisions of 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without lim-

itation employment, reinstatement, promotion, and the payment of wage lost and an additional amount as liquidated damages.

29 U.S.C. § 216(b).

(2) Discrimination

It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

(b) Interference with proceedings or inquiries

It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual—

(1) has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter;

(2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or

(3) has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this subchapter.

■ To prove retaliation using indirect evidence under the FMLA, the Sixth Circuit applies the burden shifting paradigm from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir.2001). To establish a *prima facie* case, a plaintiff must show that 1) the plaintiff availed himself of a right protected under the FMLA; 2) the plaintiff was adversely impacted by an employment decision; and 3) there exists a causal connection between the two actions. *Id.* at 314.

Defendant contends that leave to amend should be denied, as Plaintiff's proposed retaliation claim is futile for several reasons, including *inter alia,* that Taco Bell is immune under the First Amendment's petition clause, the litigation privilege and that an employer's counterclaim does not constitute an adverse employment decision

necessary to sustain such a claim. The Court addresses each of these arguments, though not in the precise order in which they have been presented.

1. Counterclaim as Adverse Employment Action and First Amendment Right to Petition

In *Thaddeus–X v. Blatter,* 175 F.3d 378, 386 (6th Cir.1999), the Sixth Circuit asserted:

Retaliation claims arise in any number of contexts.... There are variations on this theme in bodies of statutory law that allow retaliation claims (e.g., ADA, Title VII, NLRA, etc.), but the essential framework remains the same.

Moreover, the language of anti-retaliation provision(s) of the FMLA are much the same as Title VII, Americans with Disabilities Act ("ADA") and Age Discrimination in Employment Act ("ADEA"). *See Snelling v. Clarian Health Partners,* 184 F.Supp.2d 838, 846 (S.D.Ind.2002); *Serio v. Jojo's Bakery Rest.,* 102 F.Supp.2d 1044, 1051 (S.D.Ind.2000); *Mann v. Mass. Correa Elec.,* No. 00 Civ. 3559(DLC), 2002 WL 88915, *6, 2002 U.S. Dist. LEXIS 949, at *19–20 (S.D.N.Y. Jan. 23, 2002). Hence, the Court looks to cases involving these statutes for guidance.

Defendant asserts, and the Court acknowledges, that some courts have held that a counterclaim does not constitute an adverse employment decision. *See Hernandez v. Crawford Bldg. Material Co.,* 321 F.3d 528, 532–33 (5th Cir.2003) (per curiam); *Earl v. Electro–Coatings of Iowa, Inc.,* No. C02–0042, 2002 WL 32172298, *2, 2002 U.S. Dist. LEXIS 20937, at *6–8 (N.D.Iowa Oct.29, 2002); *EEOC v. K & J Mgmt., Inc.,* No. 99 C 8116, 2000 WL 34248366, **3–52000 U.S. Dist. LEXIS 8012, at *8–12 (N.D. Ill. June 8, 2000). Rosania contends that Taco Bell's position is contrary to the holdings of courts within the Sixth Circuit. *See EEOC v. Outback*

*Steakhouse of Florida, Inc.,* 75 F.Supp.2d 756 (N.D.Ohio 1999); *Gliatta v. Tectum, Inc.,* 211 F.Supp.2d 992 (S.D.Ohio 2002); *Gill v. Rinker Materials Corp.,* No. 3:02–CV–13, 2003 WL 749911, 2003 U.S. Dist LEXIS 2986 (E.D.Tenn. Feb.24, 2003).

In *Hernandez,* the court held that "an employer's filing of a counterclaim cannot support a retaliation claim in the Fifth Circuit." *Hernandez,* 321 F.3d at 532–33. The *Hernandez* court premised its decision on the fact that "[i]n the Fifth Circuit, only an 'ultimate employment decision' by an employer can form the basis for liability for retaliation." *Id.* at 531. Though recognizing that district courts from other circuits had found that the filing of a counterclaim could constitute a retaliatory employment action, the *Hernandez* court stated:

> [T]his circuit has taken a more skeptical view, remarking that "it is not obvious that counterclaims or lawsuits filed against a Title VII plaintiff ought to be cognizable as retaliatory conduct under Title VII. After all, companies and citizens have a constitutional right to file lawsuits, tempered by the requirement that the suits have an arguable basis."

*Id.* at 532 (quoting *Scrivner v. Socorro Indep. Sch. Dist.,* 169 F.3d 969, 972 (5th Cir.1999)).

■ In *Earl,* the court determined that an employer's filing of a counterclaim does not constitute post-termination conduct that is sufficiently employment related to sustain a former employee's retaliation claim. *Earl,* No. C02–0042, 2002 WL 32172298, *2, 2002 U.S. Dist. LEXIS 20937, at *6–8. Moreover, the *Earl* court, relying on *Scrivner, supra,* also noted an employer's right to file a lawsuit so long as there is a reasonable basis. *Id.* at *3, 2002 U.S. Dist. LEXIS 20937, *8. Likewise, in *K & J,* the court reasoned that a counterclaim "is unlikely to chill plaintiffs' exercise of their right to challenge discrimina-

tion under Title VII" as "plaintiffs have already made their charges with the EEOC and initiated a lawsuit against their employer." *K & J Mgmt.,* No. 99 C 8116, 2000 WL 34248366, **3–4, 2000 U.S. Dist. LEXIS 8012, at *10–11. In fact, in *K & J,* the court stated:

> The difference between the initiation of a lawsuit and the filing of a counterclaim is not insignificant. Raising a counterclaim does not cause the plaintiff to incur the expense of hiring attorneys to respond to a lawsuit since plaintiff is generally already represented in the suit, which he brought.

*Id.* at *3, 2000 U.S. Dist. LEXIS 8012, *10 (citations omitted).

The Court respectfully declines to follow these cases. To do so would disregard several well-reasoned opinions from courts sitting in, and applying the law of the Sixth Circuit.

In *Outback Steakhouse,* the court denied the defendants' motion to dismiss, holding that for purposes of Title VII retaliation claims, adverse actions are not limited to those that are employment related because:

> The reasoning for this is simple: nothing in the plain language of the statute admits of such a qualification, and there is nothing in the statute which the [c]ourt finds ambiguous. Title VII states that employers cannot discriminate against employees in retaliation for employees' participation in claims brought under the statute. In the case at hand, the [c]omplaint alleges that [the defendant] discriminated against [the plaintiff] in filing a counterclaim against her, and that [the defendant] had a retaliatory motive in doing so. "If the statutory language is unambiguous, in the absence of a 'clearly expressed legislative intent to the contrary, that language must be regarded as conclusive.'" *Russello v. United States* 464 U.S. 16,

20, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (citations omitted). The EEOC's [c]omplaint states a claim under the unambiguous language of 42 U.S.C. § 2000e–3.

*Outback Steakhouse,* 75 F.Supp.2d at 758. In so doing, the court also recognized that "[t]he impetus behind Title VII's anti-retaliation provision is the need to prevent employers from deterring victims of discrimination from complaining to the EEOC." *Id.* at 758 (citing *Robinson v. Shell Oil Co.,* 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). The *Outback Steakhouse* court observed that " 'a lawsuit ... may be used by an employer as a powerful instrument of coercion or retaliation' " and may dissuade employees from pursuing discrimination claims. *Id.* at 757–58 (quoting *Bill Johnson's Restaurants. v. National Labor Relations Bd.,* 461 U.S. 731, 740–41, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983)).

In *Outback Steakhouse,* the court also asserted that an examination of the evolution of the term "adverse employment action" demonstrates that it "was not meant to exclude adverse retaliatory actions that are not employment-related." *Id.* at 759. Further, the court reasoned that cases such as *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 886 (6th Cir.1996), which have found actions with only minimal impact to not be adverse as "not pass[ing] on whether the retaliatory act needs to be employment-related under Title VII. Rather, they only go to whether the alleged retaliatory act was sufficiently adverse." *Id.* at 760.[4]

In *Gliatta,* the court set forth a detailed review of *Outback Steakhouse,* and likewise observed that the anti-retaliation provision of Title VII "itself does not foreclose the possibility that the filing of a counterclaim can be sufficiently adverse as to amount to retaliation." *Gliatta,* 211 F.Supp.2d at 1009. Similarly, in *Gill,* the court also relied on *Outback Steakhouse* in denying the defendants' motion to dismiss under Rule 12(b)(6) and determined that "the anti-retaliation provisions of the ADA, ADEA, ... cannot be exclusively limited to adverse actions that are changes in the employment relationship." *Gill,* No. 3:02–CV–13, 2003 WL 749911; *4, 2002 U.S. Dist LEXIS 2986, at *12. The *Gill* court makes clear that Taco Bell's reliance on *Hernandez* is misplaced, as "the Fifth Circuit analyzes the 'adverse employment action' element more strictly than do most other circuits, and in this regard, has acknowledged it holds a minority view." *Id.* (citing *Burger v. Cent. Apartment Mgmt., Inc.,* 168 F.3d 875, 878 n. 3 (5th Cir.1999)).[5]

Even the Fifth Circuit has questioned the continued validity of its own strict interpretation. Though joining the per curiam decision in *Hernandez,* Judge Dennis "urge[d] that the en banc court should reconsider our rule that 'only an "ultimate employment decision" by an employer can form the basis for liability for retaliation under Title VII.' " *Hernandez,* 321 F.3d 528, 533 (citations omitted) (Dennis, J. concurring). *See also Kang v. Bd. of Supervisors of Louisiana State Univ.,* 75 Fed. Appx. 974, 977 (5th Cir.2003) (per curiam) (conceding that "we have ourselves noted

---

**4.** In *Hayes v. City of Memphis,* 23 Fed.Appx., 529, 531 (6th Cir.2001) (per curiam), the Sixth Circuit observed that it had not yet addressed whether a former employee's retaliation claim against an employer may be based on post-termination conduct so long as the "protected activity occurred during their employment." The *Hayes* court noted, however, that policies underlying the statute should be given their proper effect. *Id.*

**5.** Courts outside of the Sixth Circuit have found *Outback Steakhouse* to be persuasive. *See Hernandez v. Data Sys. Int'l, Inc.,* 266 F.Supp.2d 1285, 1306 (D.Kan.2003); *Ward v. Wal–Mart Stores, Inc.,* 140 F.Supp.2d 1220, 1231 (D.N.M.2001).

that 'the continuing vitality of the 'ultimate employment decision' doctrine is questionable in light of' recent Supreme Court decisions").

Defendant, however, argues that cases such as *Outback Steakhouse* and *Gliatta* fail to look beyond the statutory provisions at issue and consider an employer's First Amendment right to petition the government for redress also outlined in *Bill Johnson's* or *BE & K Constr. Co. v. National Labor Relations Bd.*, 536 U.S. 516, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002).[6] In *Bill Johnson's*, the Court considered the National Labor Relations Board's ("NLRB") authority to enjoin, as an unfair labor practice, a state court lawsuit allegedly filed against an employee to retaliate for engaging in protected activities under the National Labor Relations Act ("NLRA").

While the Supreme Court acknowledged the potential chilling effect of the employer's litigation, the *Bill Johnson's* Court also recognized that "[t]here are weighty countervailing considerations ... that militate against allowing the Board to condemn the filing of a suit as an unfair labor practice and to enjoin its prosecution" based on the First Amendment right to petition the government for redress. *Id.* at 741, 103 S.Ct. 2161. *See also Nestle Ice Cream Co. v. National Labor Relations Bd.*, 46 F.3d 578, 585 (6th Cir.1995). In fact, in *Bill Johnson's*, the Court stated:

> The filing and prosecution of a well-founded lawsuit may not be enjoined as an unfair labor practice, even if it would not have been commenced but for the plaintiff's desire to retaliate against the defendant for exercising rights protected by the Act.

*Id.* at 743, 97 Lab.Cas. P 10130. That is to say that the NLRB cannot not enjoin such a suit "unless: (1) the employer acted with retaliatory motive; and (2) 'the suit lacks a reasonable basis in fact or law.'" *Nestle*, 46 F.3d at 585 (quoting *Bill Johnson's*, 461 U.S. at 748, 103 S.Ct. 2161). On the other hand, analogizing from its antitrust jurisprudence, the *Bill Johnson's* Court makes clear that the NLRB may proscribe "a baseless lawsuit with the intent of retaliating against an employee for the exercise" of protected rights. *Bill Johnson's*, 461 U.S. at 744, 103 S.Ct. 2161. Such litigation is "not within the scope of First Amendment protection." *Id.* at 743, 103 S.Ct. 2161.

The Supreme Court has since set forth an explicit, detailed two-part test for discerning sham-litigation in *Prof'l Real Estate Invest., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). *See BE & K Constr.*, 536 U.S. at 526–29, 122 S.Ct. 2390 (asserting that this two-part test applies to matters under the NLRA). In *Prof'l Real Estate Investors*, the Court stated:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits ... Only if the challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit "conceals an attempt to interfere directly with the business relationship of a competitor."

*Prof'l Real Estate Invest.*, 508 U.S. at 60–61, 113 S.Ct. 1920.[7]

---

**6.** In *BE & K*, the Supreme Court confronted the issue of whether the NLRB could declare "reasonably based but [completed] unsuccessful lawsuits" brought for retaliatory purposes as lawful. *BE & K*, 536 U.S. at 531, 122 S.Ct. 2390.

**7.** Even if Rosania demonstrates that Defendant is not entitled to First Amendment im-

Moreover, in *Prof'l Real Estate Invst.*, the Supreme Court concluded that the Ninth Circuit properly determined that a suit brought with probable-cause (i.e. not baseless) shows that the objective prong has been satisfied. *Prof'l Real Estate Invst.*, 508 U.S. at 63, 113 S.Ct. 1920. The *Prof'l Real Estate Invst.* Court noted that "[p]robable cause to institute civil proceedings requires no more than 'a reasonable belief' that there is a chance that [a] claim may be held valid upon adjudication." *Id.* at 62–63, 113 S.Ct. 1920 (citations omitted).

Taco Bell asserts that Plaintiff's proposed retaliation claim does not satisfy either and is therefore futile. Defendant prematurely maintains that its counterclaims for unjust enrichment and conversion are objectively reasonable merely because Ohio law authorizes such claims, directing the Court to *State v. Brumback*, 109 Ohio App.3d 65, 671 N.E.2d 1064 (1996); *Vernon Prof'l Prop. v. Wilking*, No. C–880368, 1989 WL 140003, 1989 Ohio App. LEXIS 4327 (Ohio App. 1st Dist. Nov. 22, 1989).

In *Bill Johnson's*, the Court stated:

Although the Board's reasonable-basis inquiry need not be limited to the bare pleadings, if there is a genuine issue of material fact that turns on the credibility of witnesses or on the proper inferences to be drawn from undisputed facts, it cannot, in our view be concluded that the suit should be enjoined. When a suit presents genuine factual issues, the state plaintiff's First Amendment interest in petitioning the state court for redress of his grievance, his interest in having factual disputes resolved by a jury, and the state's interest in protecting the health and welfare of its citizens, lead use to construe the Act as not permitting the Board to usurp the traditional fact-finding function of the state-court jury or judge. Hence, we conclude that if a state plaintiff is able to present the Board with evidence that his lawsuit raises genuine issues of material fact, the Board should proceed no further with the § 8(a)(1)— § 8(a)(4) unfair labor practice proceedings but should state those proceedings until the state-court suit has been concluded.

*Bill Johnson's*, 461 U.S. at 744–46, 103 S.Ct. 2161.[8] In so doing, the *Bill Johnson's* Court rejected the employer's argument that the NLRB's assessment was limited to the complaint, as well as the NLRB's position that it could conduct a *de facto* trial on the merits. *Id.* at 744, 103 S.Ct. 2161.[9]

Since Plaintiff neither asks the Court to enjoin Taco Bell's counterclaims nor to declare them an unfair labor practice under the NLRA, Rosania urges the Court to

---

munity, Plaintiff must still prove all substantive elements of his proposed retaliation claim. *Id.* at 61, 113 S.Ct. 1920.

**8.** In *Bill Johnson's*, the Court indicated that the NLRB might look to the standards governing motions for summary judgment or directed verdicts for guidance. *Id.* at 746 n. 11, 103 S.Ct. 2161.

**9.** Since he was no longer an employee of Defendant at the time the counterclaims were filed, and therefore not eligible for FMLA leave, Taco Bell maintains that Rosania cannot demonstrate the requisite subjective retaliatory intent. This contention misses the point. "To sustain an FMLA retaliation claim, the plaintiff must allege that [he] was an eligible employee *at the time [he] took [his] leave.*" *Delgado v. Solopak Pharms., Inc.*, No. 96 C 7397, 1997 WL 403703, **3–4, 1997 U.S. Dist. LEXIS 10227, at *9 (N.D.Ill. July 15, 1997) (emphasis in original). *See also Bliss v. Jennifer Convertibles, Inc.*, No. 01 C 8661, 2003 WL 22239655, **16–17, 2003 U.S. Dist. LEXIS 17435, at *57–58 (N.D.Ill. Sept.30, 2003). In this light, as with Defendant's position with respect to the objective portion of the test set forth in *Prof'l Real Estate Invst.*, this assertion seems to be premature.

ignore the foregoing analysis. As *Thadaeus–X* makes clear, however, the essential framework of statutory retaliation provisions are the same.[10] The Supreme Court's own jurisprudence demonstrates the portability of this paradigm. In addition, the *Gliatta* court recognized:

> [N]either party has addressed what an employer-defendant must show in summary judgment proceedings or at trial, to establish that its counterclaim is brought for legitimate purposes other than as a means of retaliation. Certainly, the fact that an employee files a charge of discrimination does not immunize such employee from suit brought by the employer, provided that the employer's motivation is not one of retaliation. The issue is not before the Court under the Defendant's 12(b)(6) motion.

*Gliatta*, 211 F.Supp.2d at 1009. *Bill Johnson's* and *Prof'l Real Estate Invst.* provides components necessary to complete the analytical framework, and resolves, at least in part, if not entirely this unanswered question.

 While Taco Bell may ultimately be entitled to First Amendment immunity against Rosania's proposed retaliation claim, to decide this issue now would be premature. To do so would require the Court to rely simply on the allegations as contained Taco Bell's counterclaims. Defendant, however, may again raise these issues once the record is sufficiently developed.

### 2. Litigation Privilege

 Defendant also asserts that Rosania's proposed retaliation claim is barred and therefore futile, as the litigation privilege insulates Taco Bell from Plaintiff's

proposed retaliation claim. *See Steffes v. Stepan Co.*, 144 F.3d 1070 (7th Cir.1998); *Probst v. Ashcroft*, 25 Fed.Appx. 469 (7th Cir.2001); *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292 (11 Cir.2003). In *Steffes*, the plaintiff filed suit alleging discrimination under Title VII and the ADA. Due to one of the plaintiff's response to one of the defendant's interrogatories, following counsel's advice, the defendant called the plaintiff's subsequent employer to verify the plaintiff's employment. During this call the defendant told her new employer about the pending suit, which the plaintiff claimed constituted retaliation.

Though finding an absolute privilege too broad, the *Steffes* court affirmed dismissal of the plaintiff's retaliation claim, recognizing a qualified litigation privilege, stating "it will be the rare case in which conduct within the scope of litigation constitutes retaliation." *Steffes*, 144 F.3d at 1075. Likewise, in *Probst*, the plaintiff alleged that a number of the defendant's actions during and after his successful racial discrimination and retaliation lawsuit were retaliatory. These actions included the filing of post-judgment motions, delays and assertions of privilege in the production of discovery materials, and delaying and disputing the amount to be paid as damages, attorney's fees and back pay, and the amount of leave to be restored. The *Probst* court stated:

> None of these actions can support a finding of liability in this retaliation lawsuit, because they are all excluded from consideration by the litigation privilege—a doctrine that simply precludes actions taken in the adversarial setting

---

**10.** In *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1406–08 (10th Cir.1992), relying on *Bill Johnson's*, the Tenth Circuit affirmed a district court's finding that a third-party complaint for indemnification did not constitute unlawful retaliation under the FSLA because it was not objectively baseless, and therefore found no need to consider the motivation for its filing.

of litigation and otherwise redressable through court process from supporting further litigation.

*Probst,* 25 Fed.Appx. at 471 (citations omitted).

Likewise, in *Green Leaf Nursery,* subsequent to entering into a settlement agreement the plaintiffs filed a settlement-fraud action alleging that the defendant had engaged in discovery fraud and litigation misconduct. The plaintiffs alleged that the defendant had concealed information, provided fraudulent discovery responses, offered perjured testimony and engaged in other similar misconduct. The *Green Leaf Nursery* court explained that the defendant was immune from liability pursuant to an absolute litigation privilege under Florida law for actions taken "during the course of a judicial proceeding." *Green Leaf Nursery,* 341 F.3d at 1302 (quoting *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.,* 639 So.2d 606, 608 n. 8 (Fla.1994)). In *Green Leaf Nursery,* the court observed that the trial judge had the necessary powers to address such infractions. *Id.* (citing *Levin,* 639 So.2d at 608–09).

Granted, some courts have applied the rationale of *Green Leaf Nursery* in holding that counterclaims cannot form the basis of retaliation claims in the employment context. *See Earl,* No. C02–0042, 2002 WL 32172298, *2, 2002 U.S. Dist. LEXIS 20937, at *7–8; *K & J Mgmt.,* No. 99 C 8116, 2000 WL 34248366, **2–3, 2000 U.S. Dist. LEXIS 8012, at *8–9. Similar arguments, however, have been offered and rejected in *Outback Steakhouse* and *Gliatta.* In *Outback Steakhouse,* the court stated:

> Courts may indeed have the tools to deal with bad faith litigation; but that is essentially a policy consideration that is properly the subject of legislative cognition. It supplies no reason to disregard

the language of a statute, if that language is plain and unambiguous.

*Outback Steakhouse,* 75 F.Supp.2d at 760. Likewise, the *Gliatta* court maintained:

> [W]hile there may be other means by which to deal with a counterclaim allegedly made in bad faith, Plaintiff should be able to avail herself under the anti-retaliation provision since the language of the statute itself supports her claim.

*Gliatta,* 211 F.Supp.2d at 1009.

As a consequence, the Court finds that Plaintiff's proposed retaliation claim is neither barred nor made futile by the litigation privilege. Accordingly, Plaintiff's motion for leave to file an amended complaint is granted.

### CONCLUSION

For the reasons stated above, Defendant's partial motion to dismiss Plaintiff's negligence and certain damages claims (Doc. No. 10) is granted. Plaintiff's motion for leave to file amended complaint (Doc. No. 21) is also granted.

IT IS SO ORDERED.

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that Defendant's partial motion to dismiss Plaintiff's negligence and certain damages claims (Doc. No. 10) is granted.

FURTHER ORDERED that Plaintiff's motion for leave to file amended complaint (Doc. No. 21) is also granted.