JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiffs-appellants[1], "the Sieberts," and defendant-appellee[2], "Lalich," cross-appeal from the lower court's decision concerning post-trial motions and the rulings denying Lalich's motions for summary judgment and for a directed verdict in this fraud action arising from the Sieberts' purchase of Lalich's residential property in Shaker Heights. For the reasons that follow, we affirm.
 {¶ 2} In August 2002, the Sieberts offered to purchase Lalich's 81-year-old Van Aken home subject to the terms of a purchase agreement (the "Agreement"). The Agreement was subject to roof and heating system inspections, the City point-of-sale inspection, and the buyer's attorney's review. The Sieberts secured an inspection of the roof, although it was disputed at trial as to whether the inspection covered a portion referred to as the "flat roof." They also reviewed the City's point-of-sale inspection and assumed the correction of certain code violations.
 {¶ 3} There is conflicting testimony as to whether there were boxes covering a crack in the garage floor during all of the Siebert's visits of the property. The Sieberts claim that boxes and a dog crate covered cracks in the floor. Lalich claims he did not put any boxes in the garage until after the Sieberts purchased the home and he began packing to move. The point-of-sale inspection did not cite the crack in the garage floor as a code violation.
 {¶ 4} It was undisputed that Lalich disclosed, verbally and in writing, sporadic leaking in specific portions of the basement, i.e., the southeast corner and central western part of the basement. This was reflected in the state mandated residential property disclosure form as well as the unanimous testimony of the witnesses. Lalich indicated on the residential property disclosure form that the "drive drain will back up because of debris — It will need snaked [sic] once in a while."
 {¶ 5} Lalich painted the basement with a waterproof paint prior to listing the home for sale. Lalich maintains he did so as a course of his extensive renovation of the property, since his purchasing of it from the Klauses in 2000. Coincidentally, the Sieberts also viewed the home when it was for sale in 2000 but did not make an offer at that time. The Klauses had also disclosed seepage in the basement running to the drains and had replaced a wall of the basement before selling the property.
 {¶ 6} The Sieberts did not obtain a general home inspection nor an inspection of the basement. Sometime before May 2003, the back wall of the basement began to "bow" and required removal and replacement. The Sieberts maintained that they also discovered a crack in the garage floor and a leak in the flat roof over the kitchen. The Sieberts believe Lalich actively concealed the basement water problem among the other defects in the home.
 {¶ 7} The Sieberts commenced this action for fraud against Lalich. The matter proceeded to jury trial, which resulted in a plaintiffs' verdict in the sum of $35,394 compensatory damages and $24,000.00 punitive damages. Upon Lalich's motion, the trial court granted a partial judgment notwithstanding the verdict, vacated the award for punitive damages, and granted plaintiffs the option of accepting a remittitur in the amount of $16,859 with interest within 20 days of the judgment in lieu of a new trial on compensatory damages.
 {¶ 8} The Sieberts appealed and Lalich cross-appealed. We address their corresponding assignments of error below and together where it is appropriate for discussion.
 {¶ 9} "I. The trial court erred in granting a partial judgment notwithstanding the verdict in favor of defendant, because there was substantial credible evidence at trial supporting the jury's verdict.
 {¶ 10} "II. The trial court erred in granting a judgment notwithstanding the verdict on plaintiffs' claim for punitive damages in light of substantial credible evidence supporting the jury's findings of legal malice.
 {¶ 11} "Cross-Assignment of Error I. The trial court erred when did not grant cross-appellant, Lalich's motion for a directed verdict.
 {¶ 12} "Cross-Assignment of Error II. The trial court erred when it did not grant Lalich's motion for summary judgment.
 {¶ 13} "Cross-Assignment of Error III. Lalich's motion for JNOV should have been fully granted."
 {¶ 14} The standard applicable to a motion for summary judgment, a directed verdict, and a motion for judgment notwithstanding the verdict ("JNOV") are the same. Each of the motions should only be granted if the movant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the non-movant. E.g., Posin v.A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271; Cunningham v.Hildebrand (2001), 142 Ohio App.3d 218, 224; Altmann v. SouthwyckAMC-Jeep Renault (1991), 76 Ohio App.3d 92, 95; Sanek v. DuracoteCorp. (1989), 43 Ohio St.3d 169, 172; Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115.
 {¶ 15} The trial court does not weigh evidence or consider the credibility of the witnesses, but rather, reviews and considers the sufficiency of the evidence as a matter of law. Texler v. D.O. SummersCleaners Shirt Laundry Co. (1998), 81 Ohio St.3d 677; Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66; O'Day v. Webb (1972),29 Ohio St.2d 215. We are to conduct a de novo review of the trial court's decisions on these motions. E.g., Howell v. Dayton Power LightCo. (1995), 102 Ohio App.3d 6; Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
 {¶ 16} The Sieberts asserted one count of fraud against Lalich arising from the sale of the residence located at 3113 Van Aken Boulevard, Shaker Heights, Ohio ("Van Aken Property"). The Sieberts asserted that Lalich committed fraud in the following respects: actively concealed the extent and nature of the water leakage problem in the basement by painting it; actively concealed a leak in the flat roof by painting the kitchen; failed to disclose carpenter ant infestation; and actively concealed a "major structural problem with the garage floor."
 {¶ 17} Lalich denied the accusations and relied, in part, on the doctrine of caveat emptor as his defense. Lalich relied also on the "as is" and integration clauses in the Agreement.
 {¶ 18} The trial court denied Lalich's motions for summary judgment and directed verdict but granted in part his motion for JNOV following the jury verdict. The trial court rendered a well-reasoned opinion that thoroughly detailed the basis of its decision after employing the proper standard of review. R. 55.
 {¶ 19} As set forth previously, the Sieberts did not obtain an inspection of the basement due to their interpretation of Lalich's disclosure and mannerisms as reflecting no-serious issue. Lalich did not disclose any problem with the flat roof or the garage floor. He testified that the crack in the garage floor was obvious and was not concealed during at least some of the Sieberts' many visits to the home. Lalich denied any knowledge of the flat roof leaking. According to the record, the Sieberts paid $3,370 for repairs to the roof.
 {¶ 20} The Sieberts testified that major leaking in the basement occurred to the point that the back wall began to bulge. They retained Frank Spanulo to fix the problem. Mr. Spanulo testified that the wall had to be removed, replaced, and waterproofed. Mr. Spanulo's estimate included additional recommendations concerning repairs/work on other parts of the basement and incidental costs. The Sieberts indicated some of the work on Mr. Spanulo's estimate was not completed as of the date of trial. Mr. Spanulo received $14,505. for the work he performed.
 {¶ 21} In Mr. Spanulo's opinion, the back wall had been deteriorating for at least a year but the condition would not be apparent on inspection due to the paint on the walls.
 {¶ 22} A crack in the garage floor was depicted in photographs submitted into evidence. The City inspector did not cite the crack but indicated it was a code violation that would have to be removed and replaced had he seen it. Lalich did not disclose the crack and, among other things, stated his belief that it was not a major defect.
 {¶ 23} Neither the City inspector who performed the point-of-sale inspection nor the appraiser for the lender detected any structural defects in the home. The testimony indicates the Sieberts also relied on these inspections in consummating their purchase.
 {¶ 24} To maintain their claim of fraud in each respect, the Sieberts were required to establish the following:
 {¶ 25} "(a) a representation or, where there is a duty to disclose, concealment of a fact,
 {¶ 26} "(b) which is material to the transaction at hand,
 {¶ 27} "(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
 {¶ 28} "(d) with the intent of misleading another into relying upon it,
 {¶ 29} "(e) justifiable reliance upon the representation or concealment, and
 {¶ 30} "(f) a resulting injury proximately caused by the reliance."
 {¶ 31} Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167, 169, quotingFriedland v. Lipman (1980), 68 Ohio App.2d 255, paragraph one of the syllabus; see, also, Williams v. Aetna Fin. Co. (1998),83 Ohio St.3d 464, 475.
 {¶ 32} However, the doctrine of caveat emptor remains a viable defense to an allegation of fraudulent concealment in a real estate transaction.Layman v. Binns (1988), 35 Ohio St.3d 176, 177. In Layman, the Ohio Supreme Court reiterated the doctrine as quoted in Traverse v. Long
(1956), 165 Ohio St. 249, 252:
 {¶ 33} "The principle of caveat emptor applies to sales of real estate relative to conditions open to observation. Where those conditions are discoverable and the purchaser has the opportunity for investigation and determination without concealment or hindrance by the vendor, the purchaser has no just cause for complaint even though there are misstatements and misrepresentations by the vendor not so reprehensible in nature as to constitute fraud. * * *" Id. Consequently, "[a] seller of realty is not obligated to reveal all that he or she knows. A duty falls upon the purchaser to make inquiry and examination." Id.
 {¶ 34} Subsequent to Traverse, the Ohio Supreme Court held that latent defects do give rise to a duty on the part of the seller, and constitute an exception to the application of caveat emptor. Miles v. McSwegin
(1979), 58 Ohio St.2d 97, 100. When latent defects are coupled with misrepresentations or concealment, the doctrine of caveat emptor does not preclude recovery for fraud. Finomore v. Epstein (1984),18 Ohio App.3d 88. The nature of the defect and the ability of the parties to determine through a reasonable inspection that a defect exists are key to determining whether or not the defect is latent. Miles,58 Ohio St.2d at 101.
 {¶ 35} Similarly, a seller's active concealment or positive misrepresentation overrides an "as is" clause in a purchase agreement, which would otherwise alleviate the seller of the duty to disclose known latent defects. Eiland v. Coldwell Banker Hunter Realty (1997),122 Ohio App.3d 446, 457, citing Vecchio v. Kehn (Aug. 18, 1994), Cuyahoga App. No. 66067; Kossutich v. Krann (Aug. 16, 1990), Cuyahoga App. No. 57255.
 {¶ 36} There was sufficient evidence of fraudulent concealment of a latent defect with respect to the water problems with the back basement wall. A reasonable trier of fact could find, as they did, that the record evidence established Lalich concealed the extent of the water damage to the basement wall by covering it and the floor with a waterproof paint shortly before listing the Van Aken property for sale. There was even evidence that a piece of the wall had fallen out and was replaced by adhering it with the special paint. Thus, the trial court did not err in denying summary judgment, directed verdict, and JNOV as to this aspect of the Sieberts' claim. Accord, Klasa v. Rogers, Cuyahoga App. No. 83374, 2004-Ohio-4490. Similar to this case, the seller inKlasa made a partial disclosure of "slight dampness" on the south wall with "heavy rain." However, the evidence presented a more serious problem, including pooling of water on the floor over a period of 10 years and of which the seller was advised upon her purchase of the home.
 {¶ 37} In Klasa, we found the seller's disclosure amounted to "a partial disclosure that conveyed a false impression. 'The law of Ohio imposes a duty to make a full disclosure in these circumstances where such disclosure is necessary to dispel misleading impressions created by a partial revelation of the facts.'" Id., quoting Alpern v. Purcell
(Feb. 2, 1981), Trumbull App. No. 2863, [other citation omitted].
 {¶ 38} The same is true here. Lalich was advised of water seepage running from the walls to the drain when he purchased the Van Aken property in 2000. Although he disclosed sporadic leaking in the southeast corner and central western part of the basement, he did paint the entire basement with a waterproof paint. The unanimous testimony was that the basement looked pristine and smelled of paint. Accordingly, we find our decision in Klasa applicable and controlling on this point thus precluding summary judgment, directed verdict, or JNOV in favor of Lalich in this respect.
 {¶ 39} Similarly, the Sieberts presented evidence that, if believed, could create an issue of fact concerning Lalich's fraudulent concealment of problems with the flat roof. The Sieberts denied obtaining an inspection of the flat roof, claiming they relied on Lalich's representations that there was no problem with it. The Siebert's testimony included that a water stain bled through the kitchen walls that Lalich repainted and went all the way down to the floor. They also stated the flat roof did leak. Accordingly, the trial court did not err in denying Lalich's summary judgment, directed verdict, and JNOV motions in this respect.
 {¶ 40} The trial court did, however, grant JNOV concerning the crack in the garage floor. The trial court found the evidence lacking as to active concealment on Lalich's part and as to the cost of repair. Lalich stated there were no boxes in the garage until after the parties executed the purchase agreement and he began to pack. The crack was obvious as illustrated by the photographs in the record. Accordingly, we uphold the trial court's decision to grant JNOV as to the crack on the garage floor.
Punitive Damages
 {¶ 41} The trial court granted JNOV in part by vacating the award for punitive damages due to an absence of clear and convincing evidence required to sustain them. A review of the record supports the trial court's decision.
 {¶ 42} To merit an award of punitive damages, there must be a showing of actual malice. MacDonald v. Edwards (July 9, 1998), Cuyahoga App. Nos. 72698 72768. In Edwards, this Court followed the direction of the Ohio Supreme Court in Cabe v. Lunich (1994), 70 Ohio St.3d 598, 601, which held as follows:
 {¶ 43} "Actual malice is necessary for an award of punitive damages, but actual malice is not limited to cases where the defendant can be shown to have had an 'evil mind.' We held in Preston v. Murty (1987),32 Ohio St.3d 334, that actual malice is present where the defendant possessed either (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. In Preston, we noted that the latter category of actual malice includes 'extremely reckless behavior revealing a conscious disregard for a great and obvious harm.' Id. at 335."
 {¶ 44} In cases of fraud, the plaintiff must "not only establish the elements of the tort itself but, in addition, must either show that the fraud is aggravated by the existence of malice or ill will, or must demonstrate that the wrongdoing is particularly gross or egregious." Id., quoting Charles R. Combs, Trucking, Inc. v. International HarvesterCo. (1984), 12 Ohio St.3d 241.
 {¶ 45} Further, the plaintiff must establish actual malice with clear and convincing evidence, i.e., "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of evidence' and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."Cross v. Ledyard (1954), 161 Ohio St. 469, paragraph 3 of the syllabus.
 {¶ 46} The Sieberts point to various portions of the record which they believe support a finding of "egregious conduct" on the part of Lalich. Although these include painting over a watermark in the kitchen and stacking boxes over a crack in the garage, they urge reversal of the trial court's denial of punitive damages based largely upon case law concerning concealment of water leakage in basements.
 {¶ 47} The record does not establish clear and convincing evidence that Lalich acted with "actual malice."
 {¶ 48} That Lalich painted the basement with waterproof paint does not amount to clear and convincing evidence of actual malice, particularly since he did make oral and written disclosures of water leaking in the basement. There is no evidence that Lalich or anyone knew that the basement wall would bow or bulge or was otherwise structurally defective. There is no evidence that this would have been discernable had Lalich not painted the basement.
 {¶ 49} We find the factual circumstances of Edwards, supra more on point with the facts before us, than those in the cases cited and relied upon by the Sieberts.
 {¶ 50} In Edwards, a home buyer commenced a fraud claim against the sellers for fraudulent concealment of drainage, settling and flooding problems with the property. The trial court directed a verdict on the buyer's claim for punitive damages and the jury returned a verdict in favor of the buyer on the fraud claim. We affirmed the judgment, including the decision to direct a verdict in the sellers' favor on the punitive damage claim. We found a lack of evidence that the sellers knew the flooding would occur to the extent that it actually did. That logic applies with equal force here. There is a total lack of evidence that Lalich knew of any latent defect in the basement. There is no evidence that Lalich knew the water leakage in the basement would lead to the structural defects that manifested months after the Sieberts took possession of the house. We, therefore, affirm the trial court's decision granting JNOV to Lalich on the punitive damage award.
 {¶ 51} Accordingly, Assignments of Error I, II, and Cross-Assignments of Error I, II, and III are overruled.
 {¶ 52} "III. The trial court erred in granting remittitur, because plaintiffs offered unrebutted expert testimony supported each element of damage claimed by plaintiffs, and the jury's verdict was clearly not excessive.
 {¶ 53} The Sieberts dispute the trial court's decision affording them the opportunity to accept a reduced award within 20 days or have a new trial as to compensatory damages.
 {¶ 54} Unless a verdict is tainted by passion or prejudice, a trial court has the inherent authority to remit an excessive award to an amount that is supported by the weight of the evidence.
 {¶ 55} The Ohio Supreme Court has established the following prerequisites necessary to vest the trial court with authority to grant a remittur: (1) unliquidated damages are assessed by a jury, (2) the verdict is not influenced by passion or prejudice, (3) the award is excessive, and (4) the plaintiff agrees to the reduction in damages.Chester Park v. Schulte (1929), 120 Ohio St. 273.
 {¶ 56} "Where a reviewing court finds the verdict excessive, and that a judgment entered for the balance after remittitur of a part of the amount thereof is also excessive, it becomes the duty of the court, if further remittitur is not required and consented to, to remand the cause for new trial." Schendel v. Bradford, 106 Ohio St. 387, paragraph 4 of the syllabus.
 {¶ 57} For purposes of appellate review, a new trial granted on the basis of an excessive judgment is the equivalent of a new trial granted because the judgment is not sustained by the weight of the evidence pursuant to Civ.R. 59(A)(6). Brady v. Miller, Montgomery App. No. 19723, 2003-Ohio-458, ¶ 12 ("a motion for remittitur challenges the weight of the evidence"), citing Menda v. Springfield Radiologists, Inc., Clark App. No. 2001-CA-91, 2002-Ohio-6785; Schafer v. RMS Realty (2000),138 Ohio App.3d 244, 257-258. Thus, we review the decision under the abuse of discretion standard. Menda, 2002-Ohio-6785, ¶ 18.
 {¶ 58} In reaching its decision, the trial court opined as follows:
 {¶ 59} "There is no doubt here that the jury was asked to access unliquidated damages; nor is there any indication of passion or prejudice. Therefore, the sole question presented is whether the amount awarded was excessive given the evidence submitted. The Plaintiffs argued in final argument for $45,518 in compensatory damages; the jury returned a general verdict of $35,394. Defendant argues that the jury was improperly allowed to consider estimates for repairs and conditions of which Defendant gave them notice . * * * The Court notes that evidence of estimates was improperly admitted projecting repairs which had nothing to do with the defective back wall or the other alleged conditions that Defendant fraudulently concealed.
 {¶ 60} "To illustrate the excessive nature of the damages, the Court refers to the three-page Proposal 654 (PX 16) submitted by Spanulo Construction on July 25, 2003, which estimated work for various items totaling $28,640. Page One detailed the work to "Remove, replace and waterproof 43 linear feet of basement foundation of the back basement wall due to the water damage — $10,105." Given the jury's findings this expense for the 'basement back wall' was proper and supported by the evidence.
 {¶ 61} "However, Page Two of the estimate detailed work described as `Foundation waterproofing from the wall to be rebuilt to the wall of foundation that has previously been rebuilt by another contractor — $4,370.' Similarly, Page Two, also described 'Foundation waterproofing on the front wall of the house not previously waterproofed by prior contractor — $5,985.' This also included estimates for concrete footers, `if needed,' ($645) and 'possible' rebuilding of three basement window wells ($1,650). There was no evidence to establish a casual connection between the leaking or failure of the basement back wall, which Defendant was found to have fraudulently concealed with the estimated waterproofing of other foundation areas of the house. Defendant advised of front wall leaking under the patio in his Disclosure Form. These unrelated estimates totaled $12,650 and should not have been submitted to the jury."
 {¶ 62} The trial court went on to detail additional damages totaling $5,885 that were unrelated to the Sieberts' claim against Lalich and should have been withdrawn from the jury's consideration. In sum, the trial court reasoned that the Sieberts could "not use the failure of the rear basement wall as a convenient opportunity to waterproof the rest of the foundation of this 81-year-old home and charge it to Defendant." On review, we also note that Mrs. Siebert testified that they had intended to waterproof the basement anyway based on Lalich's disclosures just as they had done with their previous home in Shaker Heights. It was the structural damage to the back wall that they did not anticipate.
 {¶ 63} The trial court further reasoned that it was excessive to charge Lalich with the cost of replacing the entire garage floor due to a 1½ deep crack in it.
 {¶ 64} The trial court observed that the parties had not requested a breakdown of the general damage award. Accordingly, the trial court found the award manifestly excessive in the amount of damages it calculated that were submitted to the jury that were unrelated to Lalich's fraud.
 {¶ 65} We find the record contains competent, credible evidence, including that cited by the trial court, which supports the trial court's decision. Accordingly, the trial court did not abuse its discretion and this assignment of error is overruled. {¶ 66}
"Cross-Assignment of Error IV. The trial court abused its discretion when it submitted improper jury instructions."
 {¶ 67} Lalich contends that the trial court erred by instructing the jury as follows:
 {¶ 68} "In order to satisfy the first element of false representation or concealment, it is not necessary that Plaintiffs prove a false statement of fact if Plaintiffs prove that Defendant made statements of fact that while technically true as far as they went were nonetheless misleading in light of the circumstances and Defendant's failure to state other facts necessary to make such statements not misleading, so-called half-truths." Although Lalich does not quote it, the instruction went on to provide "[a] statement which, while stating the truth so far as it goes, the maker of which knows or believes to be materially misleading because of his failure to state a qualifying matter, is a fraudulent misrepresentation."
 {¶ 69} As set forth previously herein, that is an accurate statement of the law. Finomore v. Epstein (1984), 18 Ohio App.3d 88 (latent defects coupled with misrepresentations or concealment preclude the defense of caveat emptor on a fraud claim); Eiland v. Coldwell BankerHunter Realty (1997), 122 Ohio App.3d 446, 457, (active concealment overrides "as is" clause in purchase agreement); Klasa v. Rogers, Cuyahoga App. No. 83374, 2004-Ohio-4490, quoting Alpern v. Purcell (Feb. 2, 1981), Trumbull App. No. 2863 ("'The law of Ohio imposes a duty to make a full disclosure in these circumstances where such disclosure is necessary to dispel misleading impressions created by a partial revelation of the facts.'")
 {¶ 70} In addition, Lalich asserts that the following portion of the trial court's instruction was improper:
 {¶ 71} "If you find that the Plaintiff failed to prove by the greater weight of the evidence that the Defendant knowingly concealed the defect when there was a duty to disclose it, you will find in favor of the Defendant."
 {¶ 72} Lalich claims the term "the defect" confused the jury by implying to the jury that an actual defect existed. Instructions to a jury "may not be judged in artificial isolation but must be viewed in the context of the overall charge." State v. Price (1979),60 Ohio St.2d 136, paragraph four of the syllabus. When the above-excerpt is read in context of the whole charge, the trial court's use of the verbiage "the defect" in this isolated portion would not have been confusing to the jury or prejudicial to Lalich.
 {¶ 73} Lalich's Cross-Assignment of Error IV is overruled.
Judgment affirmed.
It is ordered that appellants/cross-appellees and appellee/cross-appellant share equally their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, J., CONCURS
CHRISTINE T. McMONAGLE, J., CONCURS
IN JUDGMENT ONLY
[1] Thomas Siebert and Deborah Siebert.
[2] Melvin Lalich.