JOURNAL ENTRY AND OPINION
{¶ 1} On June 19, 2003, plaintiff-appellee/cross-appellant Deborah A. Lynch ("Lynch") filed her complaint against defendants-appellants/cross-appellees John A. Studebaker ("Studebaker"), Howard Falberg ("Falberg"), Robert L. Kelly ("Kelly"), and the American Kennel Club Canine Health Foundation ("Foundation"), alleging age discrimination in violation of public policy, age discrimination in violation of Ohio law, gender discrimination in violation of public policy, gender discrimination in violation of Ohio law, and defamation. *Page 3 
 {¶ 2} The facts giving rise to the instant action involve Lynch's termination from the Foundation in 2003. Lynch worked as executive vice-president of the Foundation. Falberg acted as president of the Foundation's Board of Directors ("Board") from 2001 until March of 2003. Studebaker succeeded Falberg and acted as president in March 2003.
 {¶ 3} In May 2002, the Board decided to relocate the Foundation to Raleigh, North Carolina, where the American Kennel Club ("AKC") is headquartered. The Board chose three employees to relocate to North Carolina. The Foundation terminated Lynch, basing their decision on a reduction in work force. Lynch alleges the Foundation terminated her because both Falberg and Studebaker wanted to replace her with a person in a younger age bracket.
 {¶ 4} Upon termination, Lynch removed all personal items from her office and copied all files from her hard drive.
 {¶ 5} On October 28, 2004, defendants-appellants filed their amended answer and counterclaims, alleging tortious interference with business relations, breach of the duty of loyalty, violation of Ohio's Deceptive Trade Practices Act set forth in R.C. 4165.01 — 4165.04, conversion, and misappropriation of trade secrets.
 {¶ 6} Lynch filed a motion for summary judgment as to her claims for statutory retaliation and as to defendants-appellants' counterclaims. The motion for summary judgment was denied on March 15, 2005. On February 18, 2005, defendants-appellants filed a motion for partial summary judgment, which was granted on March *Page 4 
15, 2005, as to Lynch's gender discrimination claims and her statutory retaliation claim.
 {¶ 7} Lynch subsequently dismissed both public policy and statutory claims for gender discrimination, and dismissed her public policy claims for age discrimination and retaliation. Lynch's statutory claims for age discrimination, defamation, and retaliation remained pending. Defendants-appellants dismissed all counterclaims against Lynch.
 {¶ 8} On May 2, 2005, the case proceeded to a jury trial. The jury found in favor of Lynch and against defendants-appellants. The jury initially awarded Lynch the following damages for age discrimination: $180,000 in past compensatory damages; $67,500 in future compensatory damages; and punitive damages against Studebaker, Falberg and the Foundation, each in the amount of $8,250. The jury awarded the following for Lynch's retaliation claim: no compensatory damages, but punitive damages against the Foundation and Studebaker, each in the amount of $680,000. As to Lynch's defamation claim, the jury awarded the following: no compensatory damages, but punitive damages against the Foundation and Studebaker, each in the amount of $680,000.
 {¶ 9} After all counsel conferenced with the trial court off the record, the court provided the jury further instruction and ordered that they return to the jury room for further deliberation. Thereafter the jury returned to the courtroom with revised verdict forms. The jury awarded the following for age discrimination: $180,000 in *Page 5 
past compensatory damages; $67,500 in future compensatory damages; and punitive damages against Studebaker, Falberg and the Foundation, each in the amount of $8,250.
 {¶ 10} For defamation, the jury awarded Lynch $68,062 in compensatory damages, and punitive damages against Studebaker and the Foundation, each in the amount of $34,031. As for retaliation in violation of R.C.4112.02(1), the jury awarded Lynch $45,375 in past compensatory damages, $45,375 in future compensatory damages, and punitive damages against Studebaker and the Foundation, each in the amount of $22,687.
 {¶ 11} On May 16, 2005, defendants-appellants filed a motion for judgment notwithstanding the verdict as to all three counts presented to the jury: age discrimination, defamation, and retaliation in violation of Ohio law. The trial court granted the motion in part as to retaliation only, and denied the remainder of the motion. The trial court deemed the damages award for retaliation stricken. The parties thereafter filed the instant appeal.
 {¶ 12} In the interest of organization and efficiency, the parties' assignments of error are addressed out of order.
PLAINTIFF-APPELLEE/CROSS-APPELLANT'S ASSIGNMENT OF ERROR NUMBER ONE
 "The trial court erred when it granted judgment notwithstanding the verdict with respect to Lynch's retaliation claim." *Page 6 
 {¶ 13} Lynch argues that the trial court erred in granting defendants-appellants' motion for a directed verdict as to Lynch's retaliation claim. We disagree.
 {¶ 14} Appellate courts apply a de novo standard of review when reviewing a motion for judgment notwithstanding the verdict.
 "When reviewing the propriety of a trial court's decision regarding a motion for JNOV, an appellate court employs the standard of review applicable to a motion for a directed verdict. An appellate court reviews a trial court's ruling on a motion for a directed verdict de novo, as it presents an appellate court with a question of law. A motion for a directed verdict assesses the sufficiency of the evidence, not the weight of the evidence or the credibility of the witnesses." Kane v. O `Day, 9th
Dist. No. 23225, 2007-Ohio-702. (Internal citations omitted.)
Pursuant to Civ.R. 50(A)(4):
 "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 15} Lynch alleged in her amended complaint that defendants-appellants retaliated against her for filing the instant action, in violation of R.C. 4112.02, by filing their counterclaim. *Page 7 
 {¶ 16} R.C. 4112.02 states:
 "It shall be an unlawful discriminatory practice:
 (I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding or hearing under sections 4112.01 to 4112.07 of the Revised Code."
 {¶ 17} In order to prevail, Lynch must set forth a prima facie case of retaliation demonstrating the following four factors: (1) plaintiff engaged in a protected activity; (2) plaintiff's engagement in the protected activity was known to defendants; (3) defendants thereafter took adverse employment action against plaintiff; and (4) there exists a causal connection between the protected activity and the adverse employment action. Chandler v. Empire Chem., Inc. (1994),99 Ohio App.3d 396.
 {¶ 18} Applying the first prong of the Chandler test to the facts of this case, we find that Lynch engaged in a protected activity, filing a lawsuit against her former employer. Lynch also satisfied the second prong of the Chandler test because Lynch's engagement in litigation was known to defendants-appellants as evidenced by service of the complaint and defendants-appellants' answer and counterclaims in response.
 {¶ 19} There remains a question, however, as to whether or not defendants-appellants' counterclaim constitutes an adverse employment action against Lynch, *Page 8 
in satisfaction of the third prong in Chandler. State courts in Ohio have not addressed this issue directly. However, the United States District Court for the Northern District of Ohio, applying this issue to comparable federal employment law, determined that the filing of a counterclaim can constitute an adverse employment action. Rosania v.Taco Bell of America, Inc. (N.D.Ohio 2004), 303 F.Supp.2d 878. "Certainly, the fact that an employee files a charge of discrimination does not immunize such employee from suit brought by the employer, provided that the employer's motivation is not one of retaliation." Id. citing Gliatta v. Tectum, Inc. (S.D.Ohio 2002), 211 F.Supp.2d 992.
 {¶ 20} The United States Supreme Court set forth a two-prong test, holding that an employer's counterclaim may not be enjoined unless:
 "(1) the employer acted with retaliatory motive; and
 (2) the suit lacks a reasonable basis in fact or law."
Nestle Ice Cream Co. v. Natl. Labor Relations Bd. (C.A.6 1995),46 F.3d 578, quoting Bill Johnson's Restaurants, Inc. (1983), 461 U.S. 731.
 {¶ 21} Thus, we must determine whether or not defendants-appellants acted with a retaliatory motive. Scant evidence was produced at trial to show a retaliatory motive. Studebaker testified on cross-examination as follows:
 "Q. You dismissed all of the claims against Debbie Lynch, correct?
 A. I dismissed all of them?
 Q. The Foundation did as you understand it? *Page 9 
 A. I believe that's right.
 Q. Because you determined that they were baseless, correct?
 A. After a period of time, we did, I think that's right. * * *
 Q. Sir, you would not have even brought this lawsuit, your lawsuit with those counterclaims against Debbie Lynch if she had not sued the Foundation, correct?
 A. I believe that's correct.
 Q. You wouldn't have brought the claims if she hadn't accused you guys of discrimination, isn't that true?
 A. Probably." Tr. 462-463.
 {¶ 22} We do not find that Studebaker's testimony provides any evidence of retaliatory motive. Studebaker admitted that defendants-appellants dismissed all of their claims against Lynch prior to trial. Studebaker also admitted that defendants-appellants found the counterclaim baseless "[a]fter a period of time * * *." However, Studebaker never indicated that defendants-appellants believed their claims to be baseless upon filing of the counterclaim or that defendants-appellants intentionally stalled in dismissing their claims to further a retaliatory motive.
 {¶ 23} On a final note, Studebaker's admission that defendants-appellants would not have filed their counterclaim save for Lynch filing her complaint does not provide evidence of a retaliatory motive either. Therefore, we need not proceed to the second prong of the test set forth in Bill Johnson's Restaurants, Inc. and address whether or not the suit lacks basis in fact or law. *Page 10 
 {¶ 24} In light of the foregoing facts as applied toChandler, we find that there lacks a causal connection between the protected activity of filing a lawsuit and an adverse employment action: that is, defendants-appellants' alleged retaliatory counterclaim.
 {¶ 25} "We hasten to add, however, that it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation prohibited by these statutes [federal employment law]."Steffes v. Stepan Co. (C.A.7 1998), 144 F.3d 1070.
 {¶ 26} Plaintiff-appellee/cross-appellant's assignment of error number one is overruled.
DEFENDANTS-APPELLANTS/CROSS-APPELLEES' ASSIGNMENT OF ERROR TWO
 "Because the filing of a Counterclaim and the communication of the fact of filing is privileged, the Foundation and Mr. Studebaker were entitled to judgment as a matter of law on Appellee's defamation claim."
 {¶ 27} Defendants-appellants argue that filing a counterclaim and informing others of said filing is privileged and, as such, the trial court erred in denying them judgment as a matter of law regarding Lynch's defamation claim. More specifically, defendants-appellants argue that the only evidence of defamation that exists on the record is the fact that defendants-appellants filed a counterclaim and communicated the existence of the counterclaim to the following: the Foundation's board of directors; Mr. Menaker, executive member of the AKC; and Dr. Ostrander, a member *Page 11 
of the American Association for the Advancement of Science, an organization that often collaborates with the Foundation. We disagree.
 {¶ 28} As already stated, appellate courts apply a de novo standard of review to both motions for directed verdict and motions for judgment notwithstanding the verdict. Kane, supra Additionally, Civ.R. 50(A)(4), states:
 "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 29} A defamation claim consists of five elements: 1) a false statement; 2) about the plaintiff; 3) published to a third party; 4) with the required degree of fault by the defendant publisher; and 5) defamatory per se or defamatory per quod, causing special harm to the plaintiff. Stohlmann v. WJW TV, Inc., Cuyahoga App. No. 86491,2006-Ohio-6408. Notably, truth is an absolute defense to a defamation action. Krems v. University Hosp. of Cleveland (1999),133 Ohio App.3d 6.
 {¶ 30} A review of the records reveal that Studebaker informed Menaker, via letter, of the pending litigation against Lynch and urged Menaker to deny Lynch a delegate seat to the AKC. Menaker conveyed the information contained in the letter to the board of directors of the AKC in a meeting in which minutes were taken. The minutes were thereafter published on the AKC website and available for review by the general public. The AKC denied Lynch's application for a delegate position. In *Page 12 
construing the evidence against the elements of defamation and in construing the evidence in a light most favorable to Lynch, we cannot find that reasonable minds could come to but one conclusion adverse to Lynch.
 {¶ 31} Lastly, defendants-appellants argue that pursuant to Surace v.Wuliger (1986), 25 Ohio St.3d 229, filing a counterclaim and thereafter communicating its existence to others is privileged and thus, they are immune from Lynch's defamation claim. However, the Surace court held the following:
 "No action will lie of any defamatory statement made by a party to a court proceeding, in a pleading filed in such proceeding, where the defamatory statement is material and relevant to the issue." Id.
 {¶ 32} We find defendants-appellants' argument misplaced for two reasons. First, Surace only protects those statements made in a pleading by a party to a court proceeding, and does not create a privilege as to statements made outside of a court proceeding. Second, we have already determined that defendants-appellants not only informed Mr. Menaker and the AKC Board of Directors of the pending litigation with Lynch, but made further comment discouraging the AKC Board of Directors from offering Lynch a delegate position to the AKC. Thus, we find that defendants-appellants' statements extended beyond merely informing a third party of pending litigation.
 {¶ 33} Defendants-appellants' assignment of error two is overruled. DEFENDANTS-APPELLANTS/CROSS-APPELLEES' ASSIGNMENT OF ERROR NUMBER ONE *Page 13 
"Because one cannot have an award of punitive damages without a corresponding award of compensatory damages, the Court should have struck the jury's original verdicts on Appellee's retaliation and defamation claims."
 {¶ 34} In the instant case, the jury's initial verdict forms awarded the following: for age discrimination, $247,500 compensatory damages and $24,750 in punitive damages; for retaliation, the line for compensatory damages was blank, and the Foundation and Studebaker were each assessed $680,000 in punitive damages; for defamation, the line for compensatory damages was blank, and the Foundation and Studebaker were each assessed $680,000 in punitive damages. Defendants-appellants argue that the trial court erred in ordering the jury to further deliberate and to clarify the blanks in the verdict forms. We disagree. It is well settled that, "[w]hen a general verdict and the jury's answers to interrogatories are consistent, Civ.R. 49 requires a court to enter the appropriate judgment upon the verdict pursuant to Civ.R. 58." Lewis v. Nease, 4th Dist. No. 05CA3025, 2006-Ohio-4362. Here the general verdict forms and the interrogatories were consistent. However, the court did not enter the appropriate judgment upon the verdict pursuant to Civ.R. 58. Instead, the trial court sent the jury back to the jury room to clarify the blank entries for compensatory damages as to defamation and retaliation with the following instruction:
 If you do not award compensatory damages, you cannot consider punitive damages. And that applies as to the discrimination, retaliation and defamation. Everybody is sort of shaking their head. The second question that relates to that is I need you to indicate, go back into the *Page 14 
jury room and indicate on your verdict forms whether you intended to have separate punitive damages awards for the retaliation as well as the defamation. Because it's the same number and it's not a round number. It's a number to a particular dollar. And that's what caught our attention. So if you could go back and clarify that for us please. * * *
 {¶ 35} The trial court then sent the jury back to the jury room, conferenced with all counsel off of the record, and then summoned the jury back to the courtroom, stating the following:
 "I want to clarify something which I said just before you went back out. Where I re-read the instruction with respect to punitive damages may only be awarded if in fact compensatory damages have been award [sic] as to a particular claim. If in fact, however, it is your intention, and was your verdict not to award compensatory damages on those claims, then indicate that by a zero or whatever in the space provided. That is for your determination. I don't want you to think I'm telling you [that] you have to do something or not. I want you to just indicate it by your verdict. Write it down."
 {¶ 36} The jury thereafter returned and awarded Lynch the following: age discrimination remained unchanged; for defamation the jury awarded $68,062 in compensatory damages and awarded punitive damages against Studebaker and the Foundation, each, in the amount of $34,031; for retaliation, $45,375 in past compensatory damages, $45,375 in future compensatory damages and punitive damages against Studebaker and the Foundation each in the amount of $22,687.
 {¶ 37} "[A] jury should be able to conform its verdict to its intention to avoid the necessity of a new trial; but, on the other hand, the court cannot invade the province of the jury by suggesting or implying that the jury came to the wrong conclusion." De Boer v. ToledoSoccer Partners, Inc. (1989), 65 Ohio App.3d 251. This belies the *Page 15 
question: Did the trial court err by failing to enter the appropriate judgment upon the verdict pursuant to Civ.R. 58 and also by sending the jury back to the jury room to conform its verdict to is intention?
 {¶ 38} Punitive damages may not be awarded absent proof of actual damages. Shimola v. Nationwide Ins. Co. (1986), 25 Ohio St.3d 84. "To hold that the jury intended an award of actual damages in the punitive damages amount would be pure speculation and this court will not adopt such a holding." Id. "Punitive damages are awarded as punishment for causing compensable harm and as a deterrent against similar action in the future." Bishop v. Grdina (1985), 20 Ohio St.3d 26. "In the absence of an award of compensatory damages, an award of punitive damages may be taken as an indication that the jury was actuated by passion, prejudice and improper motives in making such a finding." Richard v. Hunter
(1949), 151 Ohio St. 185. Such a verdict is defective and does not authorize a judgment in favor of plaintiff. Id. Therefore, the lower court was correct in asserting that punitive damages in the instant case could not be awarded for defamation and retaliation where the lines for compensatory damages were left blank.
 {¶ 39} Where the Richard court held that we may take such a verdict as an indication that the jury acted with passion, prejudice and improper motives in making its finding, the defendants-appellants in the instant case fail to make such a showing. *Page 16 
Thus, aside from the actual verdict, we have no evidence that the jury acted with passion, prejudice or improper motives.
 {¶ 40} Additionally, the trial court permitted the jury an opportunity to conform its verdict to its intention by sending the jury back for further deliberations pursuant to De Boer. The record is clear that the trial court did not invade the province of the jury by suggesting or implying that the jury came to the wrong conclusion. Conversely, the trial court gave the jury two instructions in order to ensure it was not implying that the jury came to the wrong conclusion. Thus, defendants-appellants' first assignment of error is overruled.
DEFENDANTS-APPELLANTS/CROSS-APPELLANTS' ASSIGNMENT OF ERROR NUMBER THREE
 "The six-month statute of limitations barred Appellee's age discrimination claim."
 {¶ 41} Defendants-appellants argue that Lynch's age discrimination claim was barred by the statute of limitations. We disagree.
 {¶ 42} Pursuant to R.C. 4112.02(N) a claim for age discrimination is subject to a 180-day statute of limitations. However, said statute is inapposite to the instant case. Although defendants-appellants invoked the statute of limitations as a defense in their answer to Lynch's amended complaint, filed on October 28, 2004, defendants-appellants waived their defense in chambers and in the presence of the trial court judge. The following colloquy ensued during oral arguments as to defendants-appellants' motion for a directed verdict: *Page 17 
 "MR. THORMAN [counsel for Lynch]:
 Your Honor, I would like Mr. Hyman [counsel for defendant-appellants] to address the remarks made in chambers.
 THE COURT:
 I do recall in chambers that there was an issue of whether there be an assertion of a statute of limitations defense based on 4112 as opposed to the common law age discrimination based on public policy, at which point there was an agreement, I interpreted that if counsel forgo, did not argue that claim, that there would be no statute of limitations argument. Would that be correct, Mr. Hyman?
 MR. HYMAN:
 That would be correct, but that was before, your Honor, Miss Lynch testified on the stand that her — the first time she was told that she was terminated was May of 2002.
 THE COURT:
 I'm going to deny the motion for directed verdict. Let's get the jury out."
 {¶ 43} Pursuant to agreement between the parties, defendants-appellants waived their statute of limitations defense in exchange for Lynch dismissing her claim for age discrimination in violation of public policy. It is irrelevant that defendants-appellants discovered during trial when Lynch was informed of her termination because the statute of limitations defense was already waived.
 {¶ 44} Defendants-appellants' third assignment of error is overruled.
 DEFENDANTS-APPELLANTS/CROSS-APPELLEES' ASSIGNMENT OF ERROR NUMBER FOUR *Page 18 
 "Because the record lacks any evidence of actual malice, Appellee was not entitled to punitive damages."
 {¶ 45} Defendants-appellants contend that there lacks actual malice in the instant case and thus, punitive damages cannot be awarded. We disagree.
 {¶ 46} First we note that pursuant to our ruling on defendants-appellants' motion for judgment notwithstanding the verdict, we need only address Lynch's age discrimination and defamation claims here.
 {¶ 47} There must be a showing of actual malice in order to enter an award for punitive damages. Siebert v. Lalich, Cuyahoga App. No. 87272,2006-Ohio-6274. The Ohio Supreme Court established the requisite elements for actual malice:
 "[A]ctual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Preston v. Murty
(1987), 32 Ohio St.3d 334.
 {¶ 48} Lynch must prove actual malice with clear and convincing evidence. Stohlmann v. WJW TV, Inc., Cuyahoga App. No. 86491,2006-Ohio-6408. "Clear and convincing evidence is that measure or degree of proof which is more than a mere `preponderance of the evidence,' and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Siebert, citingCross v. Ledford (1954), 161 Ohio St. 469.
 The Ohio Supreme Court has recognized that it is rarely possible to prove actual malice otherwise than by conduct and surrounding circumstances. Accordingly, actual malice can be inferred from conduct and surrounding circumstances which may be characterized as *Page 19 
reckless, wanton, willful, or gross. Burns v. Prudential Securities, Inc. (2006), 167 Ohio App.3d 809. (Internal citations omitted.)
 {¶ 49} In applying the law to the facts of this case, we find that there exists clear and convincing evidence of actual malice such that punitive damages were appropriate. Regarding age discrimination, the record reveals that Falberg, while acting president of the Foundation, made statements to third parties regarding the need for younger individuals at the Foundation. A review of the trial transcripts also reveals that Studebaker, while acting president of the Foundation, made similar statements regarding the need for someone "young and thin, long legged, short-skirted and pretty." Tr. 214. Lastly, Lynch's replacement was a younger and less qualified person. In sum, the jury could reasonably infer by the foregoing statements and surrounding circumstances the ill will required for a finding of actual malice.
 {¶ 50} In applying the same standard to Lynch's defamation claim, we also find there exists the actual malice required for an award of punitive damages. For example, Studebaker wrote a letter to Mr. Menaker and the AKC Board of Directors not only informing them of the pending litigation against Lynch but also recommending that Lynch be denied a seat with the AKC as delegate. The jury could reasonably infer the existence of ill will in the letter. Lynch had been an active and well-respected member of the dog world and writing a letter of that nature demonstrated conduct and surrounding circumstances that gave rise to an inference of actual malice.
 {¶ 51} Defendants-appellants' fourth assignment of error is overruled. *Page 20 
DEFENDANTS-APPELLANTS/CROSS-APPELLEES' ASSIGNMENT OF ERROR NUMBER FIVE
 "The trial court abused its discretion in refusing to admit evidence of severance negotiations that took place prior to or contemporaneously with the termination and before a dispute existed between the parties."
 {¶ 52} On April 18, 2005, the trial court granted Lynch's motion in limine to exclude evidence and testimony of plaintiff's offers to compromise and her statements and conduct related to settlement negotiations. Defendants-appellants argue that the trial court abused its discretion in granting the motion. We disagree.
 {¶ 53} It is "well established that a trial court's determination whether to admit or exclude evidence will not be reversed on appeal absent a clear and prejudicial abuse of discretion." State v.Jackim, Cuyahoga App. Nos. 87012, 87400, 2006-Ohio-4756. An abuse of discretion implies that the judge's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217. Evid.R. 408 states:
 "Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to provide liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."
As such, *Page 21 
Evid.R. 408 encourages parties to settle disputes by making offers to compromise based on factors besides potential liability. This rule, however, makes exceptions when evidence of parties' settlement negotiations or compromise is offered for purposes other than proving liability or invalidity. For example, this court has sustained a trial court's admission of settlement discussions offered to demonstrate the defendants' motives. Hocker v. Hocker, 2nd Dist. No. 21559, 2007-Ohio-1671. (Citations omitted.)
 {¶ 54} Here, Lynch's motion in limine requested that the trial court exclude settlement negotiations pursuant to Evid.R. 408. The trial court did not abuse its discretion in granting the motion because Lynch's request comported with the standard set forth in Evid.R. 408. Lynch did not request that the offers to compromise be excluded when introduced for purposes other than liability or invalidity, for example.
 {¶ 55} Defendants-appellants argue that as the offers to compromise took place prior to litigation, said offers are not subject to exclusion pursuant to Evid.R. 408. Defendants-appellants are incorrect in their assertion. An existing lawsuit is not a prerequisite for a dispute to exist pursuant to Evid.R. 408. Schafer v. RMS Realty (2000),138 Ohio App.3d 244.
 {¶ 56} Therefore, the trial court did not abuse its discretion in granting Lynch's motion in limine to exclude evidence and testimony of plaintiff's offers to compromise. Defendants-appellants' assignment of error five is overruled.
 PLAINTIFF-APPELLEE/CROSS-APPELLANT'S ASSIGNMENT OF ERROR NUMBER TWO *Page 22 
 "The trial court abused its discretion when it failed to award costs and attorneys' fees to Lynch."
 {¶ 57} Here, Lynch argues that she is entitled to attorney fees and costs and the trial court erred in failing to award them. A review of the docket reveals that the parties stipulated to attorney fees pursuant to journal entry dated April 4, 2006, book 3524, page 0776. As such, the instant assignment of error is rendered moot as it pertains to attorney fees.
 {¶ 58} The standard of review regarding an award of costs is an abuse of
discretion. Maynard v. Eaton Corp., 3rd Dist. No. 9-06-33, 2007-Ohio-1906. As already stated, an abuse of discretion implies that the judge's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. Civ.R. 54(D) states:
 "Except when express provision therefore is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs."
 {¶ 59} "A trial court cannot, in its discretion, tax an expense as a cost, even where it finds the expense to have been vital and necessary to the litigation, unless it can point to a statutory provision that provides for the payment of that particular fee or expense to an officer, witness, juror, or similar individual." Parker v. IFInsulation, Inc., 1st Dist. No. C-960602, 1998 Ohio App. LEXIS 1187.
 {¶ 60} Foremost in this assignment of error is the requirement that costs be awarded to the prevailing party pursuant to Civ.R. 54(D). Here, Lynch prevailed on her age discrimination and defamation claims. In light of our ruling on defendants- *Page 23 
appellants' motion for judgment notwithstanding the verdict, Lynch did not prevail on her retaliation claim. A review of the docket reveals that costs were assessed to defendants-appellants on February 6, 2006, in the amount of $1,720. Additionally, on April 4, 2006, the trial court awarded $770 for video services used at trial.
 {¶ 61} Lynch argues that the trial court abused its discretion in awarding her only $770 in costs. Lynch asserts that she is entitled to $8,577.05 in statutory costs and $29,911.48 in nonstatutory costs as she requested. Lynch also claims that since defendants-appellants only refuted $17,330.41 of her nonstatutory costs, that she should be entitled to, at minimum, the uncontested balance of $12,581.07.
 {¶ 62} First, however, Lynch fails to argue how the trial court abused its discretion pursuant to Civ.R.16(A). Secondly, Lynch fails to cite to any statute that provides for the payment of each particular fee or expense as required pursuant to Parker.
 {¶ 63} As such, we find Lynch's second assignment of error without merit.
 {¶ 64} Judgment of the trial court is affirmed.
It is ordered that appellee and appellants share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 24 
MARY EILEEN KILBANE, PRESIDING JUDGE
 CHRISTINE T. MCMONAGLE, J., and MELODY J. STEWART, J., CONCUR *Page 1